368 So.2d 1074 (1979)
STATE of Louisiana
v.
Jessie FORD.
No. 62998.
Supreme Court of Louisiana.
March 5, 1979.
*1075 Elizabeth W. Cole, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Robert T. Myers, Asst. Dist. Atty., for plaintiff-appellee.
CALOGERO, Justice.[*]
Defendant Jessie Ford was charged by information with aggravated battery, R.S. 14:34. After trial by jury he was found guilty as charged. He was sentenced to ten years' imprisonment at hard labor, the maximum term under the statute. Defendant now appeals his conviction and sentence to this Court, urging the single assignment of error filed below.
On March 4, 1978, Alfred Thompson the victim of the offense charged went to the apartment of JoNel and Peggy Conerly in New Orleans. Thompson was in the process of moving and the Conerlys, friends of his, had promised to help. He arrived before his friends, and waited.
When the Conerlys returned to their apartment, defendant Ford walked in behind them. According to the witnesses at trial Thompson demanded money he claimed defendant had taken from him. The demand led to an argument that, in Thompson's words, was neither particularly long nor heated. After Thompson made a second request for the money, defendant pulled out a pistol and shot him once in the chest. According to Thompson he was standing ten to fifteen feet away from defendant when he was shot, and had made no threatening moves toward defendant.
Defendant testified at trial that after the demand for money, Thompson removed his shirt and came at him with a pocket knife in his left hand. It was at this point, defendant testified, that he then pulled out his pistol and shot Thompson. No one else who testified saw that knife, nor was one recovered in the subsequent investigation. Two of the state's witnesses, however, corroborated defendant's testimony on one essential point: when the shot was fired, Thompson was moving towards defendant, either trying to take his shirt off (according to the witness Raymond Phillips), or unbuttoning it (in the testimony of the witness Sheri Conerly).
At trial defendant attempted to show that he shot Thompson in self-defense and that the shooting was justified under R.S. 14:19 which provides:
"The use of force or violence upon the person of another is justifiable, when committed for the purpose of preventing a forcible offense against the person or a forcible offense or trespass against property in a person's lawful possession; provided that the force or violence used must be reasonable and apparently necessary to prevent such offense, and that this article shall not apply where the force or violence results in a homicide."
In an attempt to bolster his account of the shooting defendant took the stand and prepared to testify to a prior threat against him by the victim. Out of the jury's presence, defendant informed the trial court that the victim had not threatened him directly, but told a friend of his, one Robert Richardson, that he, Thompson, would kill defendant over the alleged stolen money. Richardson then relayed this information to him. Richardson was not in court to testify.
*1076 The state objected to the entire line of questioning. Defense counsel insisted that the testimony was admissible not for "what was said . . . but what was in [defendant's] mind, his reasons for fearing Alfred Thompson." The trial court sustained the state's objection and ruled as follows:
"The Defense has not produced Robert Richardson for cross examination as to the reality of the threats. But attempted to introduce hearsay testimony to show this defendant's state of mind. And I am of the opinion communicative threats to the defendant would be admissible. But the evidence could only come from the witness, Robert Richardson."
Defendant contends that the trial court erred in sustaining the state's objection concerning testimony in which the defendant attempted to relate threats against him by the victim and conveyed to defendant by a friend.
He argues that the alleged prior threat by the victim relayed to him by Richardson was relevant to his state of mindhis fear of Thompsonat the time of the offense; that evidence of the Richardson-Ford conversation was not hearsay, because the reality of the threat by Thompson was irrelevant to the purpose defendant's testimony was to serve; and that the trial court's ruling was thus clearly erroneous under this Court's decision in State v. Morgan, 211 La. 572, 30 So.2d 434 (1947).
At issue in this case is the proper scope of R.S. 15:482 which provides:
"In the absence of evidence of hostile demonstration or of overt act on the part of the person slain or injured, evidence of his dangerous character or of his threats against accused is not admissible."
As noted in State v. King, 347 So.2d 1108, 1110 (La.1977), this Court has repeatedly held that
"[e]vidence of prior threats made by the victim . . . [is] relevant in a case where the plea of self-defense has been raised to show that the victim was the aggressor and that defendant's apprehension of danger was reasonable. State v. Green, 335 So.2d 430 (La.1976); State v. Lee, 331 So.2d 455 (La.1976); I Wigmore on Evidence, § 63 (3rd ed. 1940); McCormick on Evidence, § 295 (2nd ed. 1972). However, evidence of dangerous character or threats against the accused is not admissible in the absence of evidence of hostile demonstration or of an overt act on the part of the person slain. La.R.S. 15:482. Overt act in this context means any act of the victim which manifests to the mind of a reasonable person a present intention on his part to kill or do great bodily harm. See State v. James, 339 So.2d 741 (La.1976); State v. Green, supra; State v. Lee, supra; State v. Brown, 172 La. 121, 133 So. 383 (1931)."
In this case, the defense presented evidence of an overt act which was sufficient to allow resort to this kind of evidence. The defendant testified that the victim removed his shirt and came at him with a knife. That account found corroboration in the state's own witnesses on at least one important point: that the victim was moving toward the defendant at the time the shot was fired, and was fumbling with his shirt in some manneran act reasonably supporting an inference he might have been reaching for something concealed within. The trial court, fully accepting the defense evidence in this regard, did not rule that the defense could not introduce evidence of the prior threat, but only that the defense would be permitted to do so only through the testimony of Richardson himself.
The trial court seems to have concluded that the defense meant to elicit defendant's testimony to prove that Thompson in fact made the threat to Richardson and that the testimony by defendant that Richardson told him of Thompson's threat was therefore hearsay. Given its premise (a premise not pertinent as we will point out in the succeeding paragraph), the court's analysis was correct. In State v. Martin, 356 So.2d 1370, 1376 (La.1978), this Court adopted the definition of hearsay appearing in McCormick's treatise on evidence:

*1077 "Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter." C. McCormick, Evidence, § 246 (Cleary ed. 1972)."
Under McCormick's definition, a witness is generally competent to testify that a statement has been made to him. In that case, the fact of communication turns as much on the credibility of the in-court witness as it does the out-of-court asserter. But if the witness thereby attempts to prove the fact that another conversation took placein this case, Thompson's conversation with Richardsonhis testimony is hearsay, as is his attempt to vouch for the contents of that conversation. The truth of the matter then turns solely on the credibility of the out-of-court asserter; in this case, were we concerned with whether Thompson communicated the threat against defendant to Richardson the truth would hinge upon the credibility of Richardson's assertion that Thompson made the threat.
But the purpose of defendant's proposed testimony in the narrow context of the legal principle at issue was not to prove that Thompson threatened to kill him. Rather, as counsel made clear to the court at the time, it was to prove defendant's state of mind as he confronted the victim in the apartment, after allegedly learning from Richardson that Thompson supposedly meant to kill him. As Wigmore points out, for this purpose, "[t]he actual making of the threats is immaterial, if there was a communication made to the defendant of supposed threats." Wigmore, Vol. II § 247.
Used for this purpose the testimony is not hearsay. An accused might act reasonably and justifiably on the misinformation of a friend, if an overt act against him has otherwise been made. "It is sufficient," the court thus wrote in Morris v. Territory, 1 Okl.Cr. 617, 99 P. 760, 762 (1909), "to prove that [the threats] were communicated to the defendant as having been made by the [victim] under such circumstances, and coming from such a source, as would authorize [a defendant] situated as [he] then was, to honestly believe that such information was true." Under Louisiana law for force to be justified when no homicide results, the force must have been "reasonable" (an objective standard) and "apparently necessary" to the defendant (a subjective standard) R.S. 14:19; State v. Guinn, 319 So.2d 407 (La.1975). When death results, the standard (a simply objective one), is whether the defendant "reasonably believed" that he was in imminent danger of losing his life or receiving great bodily harm and that deadly force was necessary to save himself. R.S. 14:20.
The jury in this case was therefore entitled, as the fact finder, to hear defendant's account in full. Testimony from Richardson would shed light on whether or not Richardson told defendant that the victim Thompson had threatened him. But that testimony would go to the weight of defendant's account, not its admissibility. In a case such as this in which death does not result, the victim, being available, can certainly deny that he ever made the threat in the first place. In that case, with or without the third-party intermediary, the issue of whether the threat was communicated to defendant is for the jury, not the court to decide, according to its assessment of the in-court testimony.
Defendant's reliance on State v. Morgan, supra, is therefore well-placed. In Morgan, defendant was charged with the death of his mother-in-law who was shot by mistake in a gun battle with his father-in-law. Defendant attempted to testify at trial that his mother-in-law had told him, some years in the past, that her husband had tried to kill her and was prevented from doing so only upon the intervention of her sons. The trial court excluded this testimony as hearsay. This Court disagreed, and reversed:
"Our opinion is that the defendant's testimony was admissible for the purpose of contradicting the evidence which the State has introduced to prove the purpose for which the defendant brought his shotgun in his automobile when he went to *1078 his father-in-law's house in search of his wife. Certainly the evidence was not objectionable as being hearsay evidence, because it was not offered for the purpose of proving the truth of what the mother-in-law had told the defendant regarding the violent disposition of her husband, but was offered merely to prove the fact that she had made the statement to the defendant. Whether the defendant's admission that the statement made to him by his mother-in-law was made four or five years before the time of the homicide made the evidence too remote to be of any importance in this case was a matter for the jury to determine."
In this case, the jury faced two essential inquiries: (1) whether defendant actually believed he was in danger of attack (even if that belief did not appear objectively reasonable); and (2) whether the force he used under the circumstances was reasonable. The defense was entitled to have the jury reach those determinations by considering all circumstances of the offense, including whether defendant believed the victim had threatened his life. The trial court's ruling was therefore erroneous, and this assignment has merit.

Decree
For the foregoing reasons the conviction and sentence of defendant Jessie Ford are reversed and the case remanded to the district court for re-trial or such further action as is appropriate.
CONVICTION AND SENTENCE REVERSED; CASE REMANDED TO THE DISTRICT COURT.
DIXON, J., concurs.
SUMMERS, C. J., dissents.
NOTES
[*] Judge Pike Hall, Jr., Louisiana Court of Appeal, Second Circuit, participated in this decision as an Associate Justice Ad Hoc.