395 So.2d 1320 (1981)
STATE of Louisiana
v.
Marese TOOMER.
No. 80-KA-2063.
Supreme Court of Louisiana.
March 2, 1981.
Rehearing Denied April 6, 1981.
*1325 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Marion B. Farmer, Dist. Atty., Herbert R. Alexander, Bogalusa, Abbott J. Reeves, Asst. Dist. Attys., for plaintiff-appellee.
M. Reggie Simmons, Franklinton, for defendant-appellant.
COVINGTON, Justice Ad Hoc.[*]
Marese Toomer was charged by indictment with first degree murder in violation of La.R.S. 14:30. After trial by jury, defendant was found guilty and, on recommendation of the jury, was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. On appeal, defendant relies on thirty assignments of error for reversal of his conviction and sentence.

FACTS
On December 18, 1978, Marese Toomer confronted his estranged girl friend, Sonja Thornton, in her car in the parking lot of a shopping center in Bogalusa, Washington Parish, Louisiana, and tried to persuade her to return to him. When she refused and attempted to drive away, the defendant went to his truck, got his pistol and fired five shots; one bullet struck the victim, fatally wounding her.

ASSIGNMENTS OF ERROR NOS. 1, 2, 3 AND 4
Defendant contends that the trial judge erred in allowing the State to present evidence of and to argue "aggravating circumstances" of the alleged crime, and in erroneously charging the jury about such circumstances.
These assignments arise out of the interpretation of the first degree murder statute, La.R.S. 14:30, in effect at the time of the crime, December 18, 1978, which read as follows:
"First degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm.
"Whoever commits the crime of first degree murder shall be punished by death or life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence in accordance with the recommendation of the jury."
Acts 1976, No. 657, effective October 1, 1967 through June 28, 1979.
The second degree murder statute, La. R.S. 14:30.1, which was in effect on the date of this crime, read as follows:
"Second degree murder is the killing of a human being when the offender is engaged in the perpetration or attempted perpetration of aggravated rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm.
"Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of probation or suspension of sentence and shall not be eligible for parole for forty years."
Acts 1978, No. 796, effective September 8, 1978 through June 28, 1979.
State v. Payton, 361 So.2d 866 (La.1978), was decided on June 30, 1978, and interpreted *1326 the murder statutes which were in effect then. The first degree murder statute was the same as that applicable here; however, the second degree murder statute contained the following extra subsection (B):
"The killing of a human being when the offender has a specific intent to kill, under circumstances that would be first degree murder under Article 30, but the killing is accomplished without any of the aggravating circumstances listed in Article 905.4 of the Louisiana Code of Criminal Procedure."
[La.R.S. 14:30.1(B)]
Acts 1977, No. 121 effective September 9, 1977 through September 8, 1979.
The Payton Court, thus, held that this provision, by implication, redefined first degree murder as a specific intent homicide accomplished with a statutorily prescribed aggravating circumstance. After Payton, the legislature re-amended the second degree murder statute to delete subsection (B), effective as of September 8, 1978, to remove unaggravated specific intent killings from the scope of second degree murder and to recast such killings to be covered by first degree murder. A judicial clarification of the murder statutes did not come until the decision in State v. Perkins, 375 So.2d 1179 (La.1979), was rendered on September 18, 1979, several months after the present trial and conviction (in April 1979).
The record shows that the definitions of first and second degree murder, as construed by the Payton Court, were employed at all stages of the trial below. We hold that the use of a more exacting definition of first degree murder in the case at bar did not and could not have prejudiced the defendant. If the jury found him guilty of an offense which required both specific intent to kill (or inflict great bodily harm) and an aggravating circumstance, it would certainly have found him guilty beyond a reasonable doubt of an offense which required specific intent. State v. Eaker, 380 So.2d 19 (La.1980).
The case of State v. Williamson, 389 So.2d 1328 (La.1980), is distinguishable. In Williamson, the defendant was convicted of an offense for which no evidence had been offered and for which the State did not prosecute. A few days prior to the alleged crime, an attempted homicide, the legislature had changed the murder statutes to require more exacting essentials in order to fall within the scope of first degree murder than the old law had required. Under the new law, first degree murder was any of four restrictive specific intent killings and second degree murder was any specific intent killing and/or felony murder. The judge charged the jury that to find the defendant guilty of attempted murder they need only determine that he specifically intended to kill, and to find him guilty of attempted second degree murder they could do so only upon finding a commission of felony murder. The jury returned a verdict of attempted second degree murder, despite the absence of evidence of an underlying felony.
The portion of the State's case to which Toomer particularly objects as prejudicial to his defense is the evidence of a witness about the presence of three persons on the sidewalk in the vicinity of the shooting when the offense occurred.
This witness, Elaine Carroll, was walking through the parking lot when the shooting took place and she was an eyewitness to the crime. As such a witness, her testimony was admissible, no matter what definition of the homicide charged was applicable at the time of the offense.
There is no merit in these assignments of error.

ASSIGNMENT OF ERROR NO. 5
By this assignment the defendant argues alternately that the State failed to prove "an aggravating circumstance," an essential element of the crime of first degree murder, according to State v. Payton, supra, in that there was no proof that Toomer knowingly created a risk of death or great bodily harm to more than one person, which was the aggravating circumstance the State relied on.
*1327 The State presented the testimony of Ms. Carroll, a shopper who witnessed the shooting and who testified that she felt herself to be in danger. She, using a diagram of the parking lot, indicated her position in that lot when the shooting occurred. The defendant knew that there were persons in addition to the victim and himself in the parking lot. Based upon this evidence, the jury could have reasonably concluded that the defendant had knowingly created a risk of great bodily harm to more than one person.
This Court will review the sufficiency of the evidence in the record, and reverse, if upon the evidence when viewed in the light most favorable to the prosecution, no rational trier of fact could have found that every essential element of the crime had been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Roy, 395 So.2d 664 (La.1981). We find that a rational jury could have found beyond a reasonable doubt that defendant had knowingly created a risk of death or great bodily harm to more than one person, and that defendant had the specific intent to kill or inflict great bodily harm.
This assignment lacks merit.

ASSIGNMENTS OF ERROR NOS. 6 AND 24
The defendant urges that the trial court erred on several grounds in denying his motion for new trial. The grounds dealing with the application of the Payton ruling have been discussed above. They have no merit.
Another ground for this motion was that the trial court erroneously prevented the defendant from introducing evidence of his good character as provided under Louisiana Revised Statutes 15:479, 480 by improperly restricting his examination of character witnesses. In attempting to interrogate these witnesses, defense counsel was not allowed to ask the question, "Have you heard the defendant's reputation in the community discussed?" because the State's objection was sustained by the Court. Defense counsel was thus unable to ask his next question, which, defense counsel asserts, would have been, "With regard to acts of violence, is the defendant's reputation in the community good or bad?"
The defendant, for the purpose of showing that the defendant was not usually a violent person, called seven character witnesses.
La.R.S. 15:480 allows evidence of the good character of the accused, "restricted to showing character as to such moral qualities as have pertinence to the crime." For example, the reputation of an accused for being a quiet, peaceable, law-abiding citizen in the community in which he lives has pertinence in a murder prosecution, whereas his reputation for truth or honesty is not pertinent. State v. Thornhill, 188 La. 762, 178 So. 343 (1938).
In the present murder trial, the defendant argues that he was denied the right to fully present the testimony of his character witnesses because the judge only allowed questions concerning the defendant's reputation for acts of violence. He argues that the trial court only allowed defense counsel to ask each character witness whether they had heard the defendant's reputation in the community discussed as it pertained to acts of violence. This brought a negative response.
La.R.S. 15:479 expresses the general rule that character, whether good or bad, depends upon the general reputation that a man has among his neighbors, not upon what particular persons think of him. A witness is not in a position to testify affirmatively to the reputation of an accused unless he has heard it discussed. State v. George, 346 So.2d 694 (La.1977); State v. Harrison, 168 La. 1115, 123 So. 800 (1929).
In the instant case, the character witnesses testified that they had never heard any discussion of the reputation of the defendant as to moral qualities having pertinence to the crime of murder. There was then no other permissible question that could have been asked of them.
*1328 We do not think the defendant was prejudiced by the ruling of the trial judge, since the character witnesses testified they had never heard his reputation for acts of violence discussed in the community. The trial court was correct in restraining the testimony of these character witnesses; there is no merit in this assignment of error. See State v. Frentz, 354 So.2d 1007 (La.1978); State v. George, supra.
The last ground urged for a new trial is that the ends of justice would be served thereby. La.C.Cr.P. art. 851(5). This is a ground upon which the trial judge may grant a new trial. It presents nothing for this Court's appellate review. State v. Matthews, 354 So.2d 552 (La.1978).
Assignments of Error Nos. 6 and 24 lack merit.

ASSIGNMENT OF ERROR NO. 7
By this assignment of error the defendant asserts that the trial court erred in imposing an excessive sentence.
The defendant now reargues the mitigating facts which were presented to the jury during the sentencing phase of the trial. Under La.R.S. 14:30 the legislature has determined that upon conviction of first degree murder the punishment shall be death or life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. Having found that the imposition of the death penalty was unwarranted, the jury had no choice but to recommend life imprisonment. The trial judge had no discretion in the imposition of sentence in accordance with the recommendation of the jury. La.C.Cr.P. art. 905.8; State v. Prejean, 379 So.2d 240 (La.1979).
It is urged that the life sentence and the denial of any chance for parole violates the Eighth Amendment of the United States Constitution as well as Art. 1, Section 20 of the Louisiana Constitution of 1974. Both of these provisions prohibit cruel, unusual or excessive punishment.
This argument was raised by the defendant in State v. Milby, 345 So.2d 18, 23 (La.1977), where this Court stated:
"[W]e cannot say that a life sentence for (what the jury found to be) the intentional murder of another human being is excessive, when the jury rejected factual defenses of intoxication and insanity."
Similarly, the present jury found an intentional murder and rejected the defendant's defenses, including the defense of intoxication.
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 8
The defendant argues that the law under which he was convicted was unconstitutionally vague and ambiguous, such that the defendant lacked proper notice of the proscribed conduct. Furthermore, the defendant contends that the law failed to inform him of "the nature and cause of the accusation" against him as required by La.Const. of 1974 Art. 1, § 13.
The defendant does not suggest that the actual murder statutes applicable to this case, La.R.S. 14:30 and 14:30.1, were vague in themselves, but rather that State v. Payton, supra, rendered those statutes so unconstitutionally vague that he lacked proper notice of the proscribed conduct. He contends that the trial judge mistakenly applied Payton to the amended statutes, despite the fact that the legislature had reenacted La.R.S. 14:30.1 and eliminated the Payton "amendment." The vagueness which, it is argued, existed in the law at the time the defendant committed this offense, was whether first degree murder required only that a killing be committed with the "specific intent to kill or inflict great bodily injury" or whether an "aggravating circumstance" must also accompany that specific intent. The defendant argues that if lawyers and judges were unable to correctly determine the law, then such law must fall as failing to provide the requisite notice.
The constitutional guarantee that an accused be informed of the nature and cause of the accusation against him requires that penal statutes described unlawful conduct with sufficient particularity and clarity that ordinary men of reasonable intelligence *1329 are capable of discerning its meaning and conforming their conduct thereto. State v. Mallett, 357 So.2d 1105 (La.1978); State v. Gisclair, 363 So.2d 696 (La.1978).
There was no evidence offered to show that lawyers, judges and the general public could not comprehend the clear meaning of the law. The mere fact that some few persons misunderstand a particular law does not mean that the fault lies with the law. A reading of the statute shows no vagueness or unclearness.
The assignment is without merit.

ASSIGNMENTS OF ERROR NOS. 9 AND 10
These assignments of error also arise from the question concerning the applicability of State v. Payton, supra, to the present case. As discussed in connection with previous assignments of error, the testimony of Elaine Carroll was presented at the trial to establish that the defendant had knowingly created a risk of death or great bodily harm to more than one person. Ms. Carroll testified that she witnessed the shooting and took cover behind a brick column in the parking lot because she felt herself to be in danger. She further testified that there were two men whom she did not know on the sidewalk near her. The defendant focuses upon that testimony, concerning the other people possibly being put in risk of death or harm, and argues that he was entitled to the names of those men, which he had requested in a bill of particulars, because they were "victims" of the aggravating circumstances.
On April 25, 1979, prior to trial, the defense counsel argued to the trial court that the State's answer to defendant's bill of particulars was insufficient. The court upheld the State's refusal to answer the following question:
"MR. SIMMONS:
Question Number Two is `State the name and address of the alleged victim or victims who were or might have been in risk of death or great bodily harm in addition to Sonja Thornton.' Your Honor, I think on a bill of particulars we're entitled to know that."
The State had submitted only the name of Elaine Carroll, and refused to give defense counsel the names and addresses or the testimony of any other witness. The defendant argues that if other persons were placed in risk of death or bodily harm, then they were victims, not merely witnesses, and their names were subject to discovery prior to trial.
The Louisiana Constitution, Art. 1, Section 13 requires that the accused be informed "of the nature and cause of the accusation against him." State v. Perkins, supra at 1181, interpreted this section to require that:
"The defense is entitled to pretrial notice of every aggravating circumstance upon which the state intends to rely in seeking the death penalty."
The discovery rules in the Louisiana Code of Criminal Procedure, Articles 716 through 729.6, are intended to eliminate unwarranted prejudice which could arise from surprise testimony. In the present case the only testimony offered by the State of a witness to the aggravating circumstances was that of Elaine Carroll, whose name had been furnished to defendant prior to trial. Defendant argues that he was prejudiced by her reference to the presence of other unnamed people at the shopping center.
The State did not call these men and there is nothing in the record to suggest that the State knew their names or anything more about them. Defendant had not demonstrated how he was prejudiced by Ms. Carroll's reference to these other people.
These assignments of error lack merit.

ASSIGNMENT OF ERROR NO. 10
The defendant challenges the constitutionality of La.C.Cr.P. art. 782 which states in pertinent part: "Trial by jury may be knowingly and intelligently waived by the defendant except in a capital case." (Emphasis added).
*1330 The defendant filed an objection to jury trial, which was overruled. The defendant argues that his rights to due process and equal protection of the law were violated by forcing him to trial by jury. The defendant contends that the murder statutes in the present case were so confusing (due to the State v. Payton holding) that a trial judge would have been better able to apply the law to the instant facts than could a jury.
Article 782 of the Code of Criminal Procedure merely repeats the provision of the Louisiana Constitution, Art. 1, Section 17, which limits waiver of jury trial to non-capital cases. There is clearly no state constitutional right not to be tried by jury, except in the very unusual case where a fair jury trial is impossible or unlikely. United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968); Singer v. United States, 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965); State v. Muller, 351 So.2d 143 (La.1977). There is nothing in the record to suggest that a fair trial by jury was impossible or unlikely.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 11
The defendant argues in this assignment that the trial court erred in denying his motion to suppress the confession made by the defendant to the police at police headquarters. The defendant argues that he was too intoxicated to adequately comprehend or validly waive the Miranda rights which were given to him. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
The confession was handwritten by Officer Wayne Kemp and signed by the defendant in the presence of Officers Kemp and Ewell. This occurred immediately following his arrest and transportation to police headquarters, less than an hour after the shooting.
Officer Kemp testified that the defendant seemed aware of what was going on. Officer Ewell did not observe any alcohol on defendant's breath. Toomer appeared to understand his rights and was coherent.
The defense called Mrs. Bobby Toomer Grosche, his mother, who testified at the motion to suppress hearing that when she went to police headquarters and saw her son soon after he had made the confession, he smelled strongly of alcohol and appeared drunk. Johnny Seal, the defendant's brother-in-law, testified that he also saw Toomer at the police station; he smelled alcohol on Toomer. Finally, the defendant testified that he had been drinking beer at several bars throughout the morning prior to the shooting that day.
In State v. Rankin, 357 So.2d 803 (La. 1978), this Court held:
"Where the free and voluntary nature of the confession is challenged on the ground that he was intoxicated at the time of the interrogation, the confession will be rendered inadmissible only when the intoxication is of such a degree as to negate defendant's comprehension and to render him unconscious of the consequences of what he is saying."
The Rankin Court added that this determination is a question of fact and the trial court's conclusion on the credibility and weight of the evidence will not be overturned unless unsupported by the evidence. State v. Hutto, 349 So.2d 318 (La.1977); State v. Manuel, 253 La. 195, 217 So.2d 369 (1968).
There is sufficient evidence in the present record to support the trial judge's conclusion that the defendant was not so intoxicated as to negate his comprehension or render him unconscious of the consequences of what he was saying. The trial court's determination of voluntariness was correct.
This assignment, therefore, is without merit.

ASSIGNMENT OF ERROR NO. 12
The defense argues that the trial court erred at the motion to suppress hearing in failing to limit the questioning of the defendant by the prosecutor on cross-examination in accordance with State v. Lovett, 345 So.2d 1139 (La.1977). In Lovett, this Court held that a defendant could take the *1331 stand, out of the presence of the jury, for the restricted purpose of testifying that a purported confession was not obtained freely and voluntarily, without subjecting himself to cross-examination upon the whole case. See State v. Day, 391 So.2d 1147 (La.1980).
The trial judge ruled that the questions could be asked "for the limited purpose of testing [the defendant's] credibility and his memory as to what took place on that day."
The questions were aimed at impeaching the credibility of the defendant. Each side is allowed to impeach the credibility of an adverse witness. When a defendant takes the stand, he may be cross-examined as any other witness. State v. Barnes, 365 So.2d 1282 (La.1978).
The questions were admissible for the limited purpose permitted by the trial judge. This limited admissibility does not infringe upon the defendant's right not to incriminate himself.
This assignment lacks merit.

ASSIGNMENTS OF ERROR NOS. 13 AND 14
These assignments of error relate to the following testimony of Officer Wayne Kemp at the trial, which the defendant argues was inadmissible hearsay.
"Q. What did Marese Toomer ask you?
A. He asked me, uh, how many years you think he'd get for manslaughter and, uh, at this time, myself and Lieutenant Ewell told him, we said, well, you're not charged with manslaughter.
MR. SIMMONS:
I'm going to object to hearsay, Your Honor, what they told him.
MR. ALEXANDER:
Well, it was said in the presence of the defendant, Your Honor.
A. We advised him that he was not charged with manslaughter; that he was charged with murder and it was an entirely different thing and he said, yeah, but a good attorney will get me manslaughter. He said, how many years you get for that? And I said, I really couldn't say. You know, I couldn't get into that. And he said, well, I've thought it all out and he said, I think you get about ten years for manslaughter."
Hearsay evidence is inadmissible in criminal trials. La.R.S. 15:434 and 15:463. State v. Jacobs, 344 So.2d 659 (La.1976). Hearsay has been defined by this Court in State v. Martin, 356 So.2d 1370 (La.1978):
"... testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value on the credibility of the out-of-court asserter."
This Court has held that evidence is non-hearsay when offered not to prove the truth of the facts recited but to prove that the utterance occurred, State v. Hatcher, 372 So.2d 1024 (La.1979), or that a conversation has taken place. State v. Ford, 368 So.2d 1074 (La.1978). As this Court pointed out in Ford, supra, 368 So.2d at 1077, "... a witness is generally competent to testify that a statement was made to him. In that case, the fact of the communication turns as much on the credibility of the in-court witness as it does the out-of-court asserter."
We hold that the witness' statements were not offered to show the truth of those statements, and were made in the presence of the defendant; and thus, are not hearsay. The statements were offered by the State during the laying of the predicate for the introduction of the confession to show that defendant was not intoxicated and that he had knowingly and freely waived his Miranda rights.
These assignments of error lack merit.

ASSIGNMENT OF ERROR NO. 15
The defendant urges that the State failed to comply with the trial court's order to file an amended answer to the defendant's discovery motion, and further failed to provide written pre-trial notice of inculpatory *1332 statements as required by La.C.Cr.P. art. 768. The record, however, contains a copy of the required 768 notice, and also a supplemental State answer containing the information ordered to be provided by the trial court; both were timely filed.
The defendant further argues that it was improper for the trial court to admit evidence concerning undisclosed oral inculpatory statements at the motion to suppress hearing, and cites State v. Qualls, 353 So.2d 978 (La.1977); State v. Boothe, 310 So.2d 826 (La.1975). These cases are inapplicable; they deal with introduction of such statements at trial, not at a hearing on a motion to suppress. Furthermore, it appears from the record that the State had actually provided a detailed description of the inculpatory statements prior to the hearing. See State v. Thomason, 353 So.2d 235 (La.1977).
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 16
This assignment of error concerns the introduction by the State of demonstrative evidence, i. e., a sketch or diagram representing the parking lot wherein the murder occurred.
The defendant objected, arguing that the sketch was inaccurate and not to scale; hence, it was not admissible to demonstrate the proximity of the other persons to the shooting. A police officer testified that he returned to the scene of the crime in order to draw the diagram. He also testified concerning how he made the sketch; it was not drawn to scale. The trial court ruled that the diagram was admissible for the limited purpose of showing the location of the victim's vehicle in the parking lot and the relationship to the position of the surrounding stores. Such an objection merely goes to the weight, not the admissibility, of the demonstrative evidence.
This Court in the case of State v. Andrews, 369 So.2d 1049, 1051 (La.1979), held that:
"Maps or diagrams generally are admissible to aid the jury in understanding testimony if shown to be an accurate representation of the subject matter in question and the ruling of the trial court relative to admissibility will not be disturbed on appeal unless there has been abuse of discretion. 3 Wharton's Criminal Evidence, § 641 (13th ed. Torcia, 1973). See also United States v. Goodwin, 470 F.2d 893 (5 CA 1972). In State v. Triplett, 285 So.2d 532 (La.1973), where the arresting officer had returned to the scene and drawn a sketch, this court held that admission of the sketch at trial was not an error. In so concluding, this court noted that the fact that the sketch was not absolutely accurate in every detail and distance did not negate its relevancy or render it inadmissible, but rather would go to the weight accorded the sketch by the jury."
In the present case the defendant was also allowed to offer a diagram of the shopping center, (Defense Exhibit 30), which was drawn to scale by an investigator for the Public Defenders Office of St. Tammany Parish. Therefore, the jury was able to evaluate the possible conflicting diagrams, and accord the appropriate weight to be given to each one.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 17
The defendant claims that the trial court erred in disallowing the following question to Officer Kemp on cross-examination.
"Q. But you didn't have any idea that he might have been intoxicated when he made this statement; `I shot her until my gun was empty'? Though, that wasn't a true statement, was it?"
The defendant contends that it was error for the court to cut off this line of cross-examination, designed to show that the officer intentionally made the confession more incriminating than the facts would actually prove. The subjective purpose underlying defense counsel's reason for asking the question (actually two questions in one) is not revealed by the record. A *1333 legitimate purpose does not excuse an objectionable question. The question was objectionable as calling for an opinion or conclusion of the witness. It was also argumentative. It is also misleading if it is intended to convey the idea that Toomer fired his pistol only one time. The record contains ample evidence to support a conclusion that the defendant shot at the victim in her car until his gun was empty. Two shots went into the door lock, two through the windshield, and one struck Sonja Thornton in the head. His gun held five bullets and he fired all of them.
Defense counsel was allowed to rephrase his question as follows:
"Q. So, you're asking this jury to believe that freely and voluntarily he made a statement more incriminating than the facts actually prove?"
Because defense counsel's subsequent question, and others, rephrasing the objectionable question, were permitted and responded to, the defendant suffered no prejudice. If the court erred in disallowing the question, the error was harmless, there being no substantial violation of any constitutional or statutory right. La.C.Cr.P. art. 921; State v. Marcal, 388 So.2d 656 (La. 1980); State v. Walker, 344 So.2d 990 (La. 1977).
This assignment of error lacks merit.

ASSIGNMENTS OF ERROR NOS. 18 AND 19
By these assignments of error the defendant objects to portions of Ms. Carroll's testimony. Ms. Carroll testified that she was in the shopping center parking lot when the shooting occurred, and that she got behind a brick column when she saw the defendant shooting because she was frightened. The defendant objected to the relevancy of any fear felt by the witness. The defendant argues that if the Payton holding were applicable, Ms. Carroll's fear did not bear any relationship to her being in danger; and if Payton was not applicable, then her testimony concerning her fear was even more prejudicially irrelevant.
As pointed out above, Ms. Carroll, as an eye-witness to the shooting, would undoubtedly have been called by the State no matter what statutory definition of murder was in effect at the time of the offense. Her testimony concerning what she saw and how she reacted thereto was relevant and admissible.
These assignments of error lack merit.

ASSIGNMENT OF ERROR NO. 21
This assignment of error involves the trial court's ruling sustaining the State's objection to a question which had been asked by defense counsel and already answered by the State witness. The defendant urges that the question was a proper one, aimed at revealing the witness' bias and that the ruling of the court constituted a comment upon the evidence adverse to the defendant.
La.R.S. 15:492 states that if the witness is biased "it is competent to question him as to any particular fact showing or tending to show such bias." In the present case, the State witness was questioned concerning her refusal to answer defense counsel's questions over the telephone prior to trial. She admitted that she refused; she said she did not think that she should talk to the defendant's counsel outside of court. Refusal to talk to a person who identifies himself as defense counsel over the telephone is not indicative of bias. In any event, the question was asked and answered; therefore, defendant cannot claim an infringement on his rights under La.R.S. 15:492.
The defendant's second argument on this question, that the court's ruling to sustain the State's objection constituted a comment by the judge on the evidence, is not supported by the jurisprudence.
La.C.Cr.P. Art. 772 prohibits any comment upon the evidence by the judge in the jury's presence; however, a ruling on the admissibility of evidence and the remarks by a trial judge giving reasons for his ruling on objections are not objectionable as comments on the case unless such *1334 remarks are unfair or prejudicial. State v. Quincy, 363 So.2d 647 (La.1978). The judge made no unfair remark in his ruling.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 22
This assignment of error concerns the introduction of a report written by Jim Churchman, an employee of the State Police Crime Laboratory. The record, State Exhibit No. 13, is the official scientific analysis of the .38 caliber revolver, the five .38 caliber cartridge casings and a bullet fragment. During his direct examination, Mr. Churchman testified that the cartridge casing (State Exhibit No. 7) had been fired from the revolver (State Exhibit No. 6) and that the bullet fragments (State Exhibit No. 11) were also probably fired from that revolver. The defendant argues that the official report prepared by Mr. Churchman in which he described the tests performed and the conclusions he reached should not have been admitted because it was hearsay.
The report was not given to the jury to examine after they retired to deliberate. The expert witness was present in court, testified and was subject to cross examination. The report was prepared by the witness himself. The jury could get nothing from the report that it did not get from the expert's explanation of the report in his testimony. The essential import of the contents of the report adds nothing to the expert's testimony. We believe that it can be safely concluded that no harm resulted to the defendant by the admission of the report. State v. Stovall, 363 So.2d 658 (La. 1978).
The exception lacks merit.
[There is no Assignment of Error No. 23; the next Assignment of Error following No. 22 is numbered 24, which was treated with No. 6.]

ASSIGNMENTS OF ERROR NOS. 25 AND 26
The defendant urges as error the trial court's admission of the character testimony of Jeff Lewis, who had known the accused in high school but had not known him since, which was presented by the State to rebut defendant's evidence of good character. La.R.S. 15:481.
Initially the defendant argues that this character witness' testimony was irrelevant because Mr. Lewis had not seen the defendant for 16 years, and did not know his recent reputation in the community. This objection was overruled by the trial court. The defendant also argues that the trial judge erred in overruling defendant's objection to this witness' description of the defendant's character as "mean and extremely violent." Defendant maintains that the witness should have been required to restrict his answer to "good" or "bad".
The import of Lewis' testimony was that the accused had a "bad reputation for being a peaceful citizen in the community." This was permissible to rebut the alleged good character of the accused, which the defendant had put at issue. La.R.S. 15:481.
Inasmuch as the defendant put his own character and reputation at issue, the State properly called witnesses to testify in rebuttal thereof. La.R.S. 15:481. The error, if any, was harmless and furnishes no ground for reversal of the conviction. State v. Bagley, 378 So.2d 1356 (La.1979).
These assignments lack merit.

ASSIGNMENT OF ERROR NO. 27
At the completion of the presentation of evidence during the guilt determination phase of the defendant's bifurcated murder trial, the defense counsel requested that the witnesses remain sequestered during the closing arguments. The trial judge ruled that any witnesses who had been released would not be sequestered, with the understanding that any witnesses who were present in the courtroom during the closing arguments would not be able to testify at the sentencing phase of the trial.
La.C.Cr.P. Art. 905.1(A) reads as follows:
"Except as provided in Part B herein, the sentencing hearing shall be conducted before the same jury that determined the issue of guilt. The order of sequestration *1335 shall remain in effect until the completion of the sentencing hearing."
The defendant argues that the sequestration rule was violated and the defendant was prejudiced because the district attorney placed his witnesses in the front rows, closest to the jury, to remind the jury of their testimony. Whether any of the state's witnesses were in fact present during closing arguments is not shown in the record. However, if any or all were present, it would not be a violation of the sequestration rule unless the State attempted to use such witness' testimony at the sentencing phase of the trial.
In any case, it is well established under La.C.Cr.P. Art. 764 [made applicable to the sentencing hearing by Art. 905.1(A)] that:
"An order of sequestration is intended to assure that a witness will testify as to his own knowledge of the case without being influenced by the testimony of other witnesses, and to strengthen the role of cross-examination in developing the facts."

State v. Lewis, 367 So.2d 1155, 1158 (La. 1979).
Lewis also points out that this Court "... will look to the facts of the individual case to determine whether the violation resulted in prejudice to the defendant." In the case at bar, counsel for defense does not allege that any of the non-sequestered witnesses were recalled to testify at the sentencing here. He has therefore failed to show prejudice within the intent of Article 764. The trial court did not abuse his discretion in allowing witnesses who would not testify at the sentencing stage to be released from the sequestration rule. State v. Sneed, 328 So.2d 126, 135 (La.1976); see also State v. Boutte, 384 So.2d 773 (La.1980).

ASSIGNMENTS OF ERROR NOS. 28 AND 29
These assignments of error urge that the trial court erred in refusing to instruct the jury concerning the crimes of Criminal Negligence or Negligent Homicide and in further refusing to allow defense counsel to argue either of these during closing argument.
La.C.Cr.P. art. 803 requires that the judge charge the jury as to any responsive verdicts which may be rendered to the indictment or charge. La.C.Cr.P. art. 814 lists the only verdicts responsive to a murder indictment:
Guilty
Guilty of Second Degree Murder
Guilty of Manslaughter
Not Guilty
Instructions on these permissible verdicts are mandatory. State v. Ferguson, 358 So.2d 1214 (La.1978).
Special requested charges are governed by La.C.Cr.P. art. 807 which provides, in part, that a special charge shall be given by the court if it does not require qualification, limitation or explanation, and if it is wholly pertinent and correct.
The judge is required to charge the jury as to the law applicable to the case; he is required to cover every phase of the case which is supported by the evidence. State v. Clement, 368 So.2d 1037 (La.1979); State v. Marse, 365 So.2d 1319 (La.1978).
In State v. Clement, this Court pointed out, however, that:
"The requested charge, however, must be supported by the evidence, for the trial court is not required to instruct the jury on abstract principles of law. See State v. Fox, 251 La. 464, 205 So.2d 42 (1967); State v. Johnson, 250 La. 85, 193 So.2d 794 (1966)."
The general charge given by the trial court instructed the jury concerning the requirement of specific intent. The court illustrated this as follows:
"Thus, if you find that the defendant was in such an intoxicated condition that he did not have the specific intent required to commit first degree murder, you must find the defendant not guilty of first degree murder."
In State v. Anderson, 390 So.2d 878 (1980) this Court was presented with a similar argument and held that the trial court's *1336 refusal to instruct the jury concerning negligent homicide or criminal negligence was not error, in that no evidence had been introduced from which the jury could have inferred that those crimes were involved rather than murder or manslaughter.
In the present case the fatal shot was fired from an extremely close range and the defendant's confession stated that he shot her because "I was going to have her one way or the other, because I love her." It does not appear that any rational juror could have inferred that the killing was accidental. The defendant did not present any evidence to suggest an accident or negligence.
The jury's verdict of guilty to the charge of first degree murder indicates that the jury was convinced beyond a reasonable doubt that the defendant possessed the requisite specific intent to kill or inflict great bodily harm.
The defendant also argues that the trial judge improperly restricted the scope of his closing argument. The trial court in the present case informed defense counsel, prior to closing arguments, that no discussion of negligent homicide would be allowed:
"THE COURT:
I'm going to tell you right now that that's not something to be argued to this Jury. That's not responsive to the charge or one of the possible verdicts.
MR. SIMMONS:
Your Honor, that will be fine. All I'm saying, it's plausible that the defendant could have been firing at the windows or trying to scare the victim, and nobody knows what he's trying to do, and it's up to the State to prove it, but it's up to the Jury to decide what his intent was and that's to be inferred from the circumstances.
THE COURT:
Well, I'm just explaining what the Court expects you to do.
MR. SIMMONS:
Thank you, Your Honor."
This colloquy immediately followed the defense counsel's objection to the trial court's ruling that the law on negligent homicide would not be charged to the jury. No objection was, however, made as to the court's additional limitation of the closing argument. Defense counsel obeyed the judge's instructions, and made no mention of accidental or negligent homicide in the closing argument. Thus, this objection was waived by the failure to make a contemporaneous objection. La.C.Cr.P. art. 841.
The trial court based this restriction upon La.C.Cr.P. art. 774, which provides in pertinent part:
"The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case."
The trial judge has wide discretion in confining the argument to the scope of the evidence. State v. Lee, 340 So.2d 180 (La.1976); State v. Dorsey, 262 La. 785, 264 So.2d 644 (1972), and to the fair and reasonable conclusions to be drawn therefrom. State v. Weathers, 320 So.2d 895 (La.1975).
In the Weathers case this Court said:
"Broadly speaking, counsel must confine themselves in argument to the facts introduced in evidence, to matters of general or common knowledge, and to the fair and reasonable conclusions to be drawn therefrom. La.Code Crim.P. art. 774 (1966); State v. Smith, 257 La. 1109, 245 So.2d 327 (1971). The trial judge is accorded wide discretion in confining the closing argument to the scope of the evidence. State v. Dorsey, 262 La. 785, 264 So.2d 644 (1972)."
The trial court properly excluded reference to accidental or negligent homicide. They were unrelated to the facts introduced in evidence. Hence, they were not within the scope of the closing argument.
In the present case, the trial court did not err in refusing the requested special charge on negligent homicide. It was not a responsive verdict and there was no evidence *1337 to support such a charge. In light of there being no evidentiary support for a theory that the defendant acted accidentally or negligently, the trial court's restriction of counsel's argument was proper.
There is no merit to these assignments.

ASSIGNMENT OF ERROR NO. 30
The defendant urges as error the trial court's refusal to admit thirteen of twenty-five photographs of the scene of the crime. The defendant argues that these photographs were offered to show the inaccuracy of the State's diagram and should have been admitted to demonstrate the inaccuracy of the allegation that other persons were in danger.
The trial court initially admitted eleven of the photographs because the State had no objection to them. The court ruled that the other fourteen photographs would be admitted if shown to be relevant to the testimony.
A foundation must be laid to establish that more probably than not demonstrative evidence is connected with the case, and has relevance. State v. Drew, 360 So.2d 500 (La.1978). In the present case defense counsel subsequently offered into evidence only one of the remaining photographs in connection with testimony presented. No attempt to offer the other unadmitted photographs was made, and no objection to the court's initial ruling was noted; therefore, this assignment of error lacks merit.

DECREE
For the foregoing reasons, we affirm the conviction and sentence.
AFFIRMED.
MARCUS, J., concurs.
NOTES
[*] Judges Covington, Chiasson and Lear of the Court of Appeal, First Circuit, participated in this decision as associate justices ad hoc, joined by Associate Justices Calogero, Marcus, Dennis and Blanche.