414 So.2d 325 (1982)
STATE of Louisiana
v.
Coby HARRIS.
No. 81-KA-1760.
Supreme Court of Louisiana.
May 17, 1982.
*326 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Leon Picou, Jr., Dist. Atty., A. Zach Butterworth, William E. Woodward, Asst. Dist. Attys., for plaintiff-appellee.
Clayton M. Perkins, Jr., St. Francisville, for defendant-appellant.
BLANCHE, Justice.
Defendant, Coby Harris, while serving a 40 year sentence for second degree murder at Angola, was charged with and convicted of simple escape, a violation of R.S. 14:110(A)(1). Harris was ordered to serve a 4½ year prison term to run consecutively with his present sentence. Defendant appeals his conviction and sentence, raising three assignments of error, one of which has been abandoned. We find that the remaining assignments of error have no merit and affirm defendant's conviction and sentence.
The state's case against Harris centered upon testimony given by Louisiana State Penitentiary Corrections Officers working at Angola. L. B. Johnston and Richard Mayeaux, two of the officers who were on duty at the time of defendant's escape, established during the state's case in chief that Harris was one of 155 inmates assigned to work in the penitentiary cotton fields. The prisoners were transported to the fields early in the morning and each inmate was assigned to work a separate row of cotton. When roll call was taken later that morning, Harris did not respond when his name was called. A head count of the inmates present revealed that one prisoner was missing. Officer Mayeaux, in attempting to locate defendant, proceeded down the row of cotton to which Harris had been assigned. All that he discovered was the absent defendant's empty cotton sack.
Eight days later, J. S. Carter, an off-duty corrections officer, spotted an individual wearing what appeared to be a prison-issue rain slicker standing beside a tree outside the penitentiary gates. Officer Carter testified that this individual was positioned in a manner that would preclude detection by approaching vehicles. The off-duty officer stopped his vehicle and turned around to investigate this person's presence. When Carter returned to where he observed the *327 individual, he was no longer present. Prison officials were immediately notified and a search party was organized. Harris was found hiding in a nearby grass field and was peacefully apprehended.
Defendant testified that he remembered being brought to the cotton field, but once there he got lost. According to defendant, he did not even know whether he was on penitentiary grounds during the time he was missing. Though Harris acknowledged that he was the individual observed by Officer Carter outside the prison gates, he stated that he was weak and dizzy and did not know where he was at the time. Defendant urged at trial that he was relieved when he was apprehended by prison officials.
On rebuttal, the state recalled L. B. Johnston, who testified as to the number of guards on duty the day defendant escaped and the method employed in guarding the cotton field. He also testified that certain cotton stalks had been broken and removed and that tracks leading from the stalks had been intentionally "scratched out." This statement tended to support the state's claim that Harris purposely evaded prison guards in order to complete his escape. The jury found defendant guilty of simple escape and he was sentenced by the trial judge to serve 4½ years at hard labor.

Assignment of Error Number 1
By this assignment of error, defendant urges that the trial judge erred in his denial of defendant's motion for a new trial. To prove defendant's guilt, the state was required to show that Harris' absence was an "intentional departure" from a place where he was legally confined.[1] In State v. Ligget, 363 So.2d 1184 (La.1978), this Court held that simple escape is a general intent crime. General intent is present when the circumstances indicate that the offender, in the ordinary course of human experience, must have averted to the proscribed criminal consequences as reasonably certain to result from his act or failure to act. R.S. 14:10. In presenting his motion for a new trial, defendant urged that the state failed to establish during its case in chief that his escape was intentional. As defendant's intent to escape was an essential element of the state's case, Harris contends that he was unduly prejudiced when the state was permitted to present evidence concerning his intentional conduct through rebuttal testimony.
Initially, we note that, though defense counsel objected to Officer Johnston's rebuttal testimony because of hearsay and leading questions, no contemporaneous objection was made as to the substance of this witness' testimony. Thus, the provisions of C.Cr.P. art. 841, which require a contemporaneous objection and statement of the grounds therefor to preserve appellate review of a trial error, were not fully satisfied.
The grounds of counsel's objections must be sufficiently brought to the attention of the trial judge to allow him the opportunity to make the proper ruling and correct any claimed prejudice to the accused. State v. Davis, 357 So.2d 1125 (La. 1978). Accordingly, a new ground for objection cannot be presented for the first time on appeal. State v. Davis, supra; State v. Monroe, 397 So.2d 1258 (La.1981); State v. Bodley, 394 So.2d 584 (La.1981).
We are also of the opinion that the evidence adduced by the state during its case in chief was of sufficient character to establish an intentional escape. The corrections officers on duty at the time of Harris' escape testified that there were a large number of persons in the general area where defendant claims he got "lost." Defendant departed from his work detail without *328 his cotton sack and, though he claimed to be looking for people while lost, he failed to attempt to flag down passing motorists on the highway outside the penitentiary gates. When Officer Carter observed him, defendant was standing beside a tree and appeared to be attempting to conceal his presence from approaching vehicles. Finally, the state established that, when Harris was eventually apprehended, he was trying to hide from prison officials in a grass field. This evidence, when considered in the light most favorable to the prosecution, was sufficient to establish an intentional escape beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1978).
Further, testimony presented by the state concerning the method of defendant's escape was designed to discredit defendant's claim that he was lost. Thus, it was properly admitted by the trial court on rebuttal. Accordingly, this assignment of error lacks merit.

Assignment of Error Number 2
By this assignment of error, defendant contends that his sentence is excessive and that the trial judge failed to properly consider and articulate the sentencing guidelines of C.Cr.P. art. 894.1. The maximum penalty for a conviction of simple escape is five years at hard labor. In the instant case, Harris was ordered by the trial judge to serve 4½ years at hard labor for his escape from Angola. This sentence is to run consecutively with the present sentences. In sentencing defendant, the judge concluded that a lesser sentence would deprecate the seriousness of the crime and that "in consideration of your record and disciplinary reports (from the Department of Corrections)", a 4½ year sentence would be appropriate. Thus, it is apparent that the trial judge failed to articulate the factual basis of his considerations in sentencing defendant.
Although this brief statement by the trial judge, standing alone, did not fulfill the requisites of C.Cr.P. art. 894.1, we conclude that the record in this case "clearly illumines" the sentencing choice. State v. Martin, 400 So.2d 1063 (La.1981).
Harris' incarceration at Angola resulted from his guilty plea to second degree murder. Originally, defendant was charged with first degree murder and armed robbery. The armed robbery charge was dropped. Besides the murder conviction, Harris' criminal record also includes charges of two counts of armed robbery.
Further, defendant's long history of disciplinary action while serving his 40 year murder sentence at Angola clearly supported the sentence imposed in the instant case. At the time the 4½ year sentence was imposed, Harris had been subjected to disciplinary action on 31 separate occasions while at Angola.[2] These disciplinary measures were the result of defendant's violation of certain prison rules, such as possession of contraband (alcohol, marijuana and a knife), gambling activities, disrespect and defiance to prison officials, disorderly conduct, aggravated work offenses and simple escape.[3] Other actions taken against Harris by prison officials dealt with such incidents as defendant's stabbing a fellow inmate, his presence in unauthorized areas and defendant's unsanitary practices, including defecating on the floor of his prison cell.
Defendant's criminal and prison records show his total lack of respect and continued defiance against authority, as well as his tendency to engage in violent conduct. These records adequately support the conclusion that Harris is in need of a custodial environment and that a lesser sentence would deprecate the seriousness of his crime.
Harris' prior conduct strongly indicates that, in the absence of a stringent sentence, *329 the same conduct is likely to recur. We recognize that defendant's escape did not, in the instant case, cause or threaten serious harm. Even so, his rebellious and often violent character lead us to conclude that the sentence imposed was necessary to impress upon defendant the seriousness of his criminal conduct. The imposition of a lesser sentence would not discourage this individual from attempting to escape from Angola in the future.
We conclude that, because there was no manifest abuse of discretion by the trial judge in imposing sentence, defendant's sentence should not be set aside as excessive.
Accordingly, the conviction and sentence of Coby Harris are affirmed.
AFFIRMED.
NOTES
[1] R.S. 14:110(A)(1):

A. Simple escape is:
(1) The intentional departure, under circumstances wherein human life is not endangered, or a person imprisoned, committed, or detained, from a place where such person is legally confined or from a designated area of a place where such person is legally confined or from the lawful custody of any law enforcement officer or officer of the Department of Corrections;...
[2] Since the escape sentence was imposed, defendant has been subjected to disciplinary action on nine additional occasions.
[3] The escape charge relates to the present offense, in which we note that Harris pleaded guilty to prison officials. As a result, defendant was transferred from Camp C to Camp J.