419 So.2d 868 (1982)
STATE of Louisiana
v.
Linwood WEST.
No. 81-KA-2418.
Supreme Court of Louisiana.
September 7, 1982.
Rehearing Denied October 15, 1982.
*870 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Ralph L. Roy and Kay Kirkpatrick, Asst. Dist. Attys., for plaintiff-appellee.
Vincent Wilkins, Jr., M. Michele Fournet, David Randall Buckley, Baton Rouge, for defendant-appellant.
WILLIAM NORRIS, III, Justice Ad Hoc.[*]
Defendant was charged by bill of information with committing the crime of perjury on March 13, 1980, when he testified during the trial styled "State of Louisiana v. Dudley Patrick Beavers" bearing docket number X-XX-XXXX on the docket of the Nineteenth Judicial District Court in violation of La.R.S. 14:123 and 124 respectively, tried by jury, found guilty, and sentenced *871 to serve fifteen years at hard labor.[1] It is from this conviction that defendant appeals.

FACTS
Defendant testified as a witness for the defense in two of the so-called "Black Muslim" trials.[2] These cases arose out of a violent confrontation between police officers and a number of Black Muslim demonstrators on January 10, 1972, when the police attempted to clear North Boulevard, a Baton Rouge thoroughfare which had been blocked by several parked cars. As a result of this confrontation or riot, five men were killed, [two Sheriff's deputies and three of the Black Muslim demonstrators] and a newspaper reporter was severely beaten.
Thereafter, the demonstrators were arrested and later tried for having incited and/or participated in a riot in which the death of a person occurred in violation of La.R.S. 14:329.1 through 329.8.[3]
Defendant testified as a defense witness, first at the re-trial of John J. Bell in late June and early July of 1976. During his testimony the following questions and answers were elicited:
Q. Did youdid you see a fellow with one of those bullhorns, talking to the crowd, telling them to dispense (sic) and clear the highthe road?
A. No, Sir.

Q. You didn't see that?
A. No, Sir. [Emphasis added.]
Subsequently, in March, 1980, during the retrial of Dudley Patrick Beavers, defendant testified again as a witness for the defense as follows:
A. Well, after they towedthe policemen towed the Toyota away, some policeman, I thinkI don't know his name, but I know he had a long trench coat on, and he asked the crowd to disperse. Told everybody *872 to break up, and they told the muslims to get off the street. Everybody to clear the street, and he asked them to move the other cars, you know.
Q. Well, he just started talking in a normal voice, or what?
A. No, he had one of those microphones or whatever they call those things that the police use sometimes, you know.
Q. Something to amplify your voice?
A. Right.
* * * * * *
Q. Can you describe, if you can, this instrument?
A. Well, justyou know, you done seen these little things they have at the football games and things that people put in their mouth to speak. Cheerleaders use and things. Well, it was one of those, but it was, you knowI guess it was a modern day thing or something like that. I don't really know the name of it, you know, but I know it was one of those speakers.
Q. Now, what, if anything, did you observe after the policemen used this instrument?
A. Well, after theyafter they told the crowd to disperse, and some people did, some people didn't and, you know, they came forward. They came on you know, like
Upon further questioning, defendant offered the following explanation about the discrepancy in his testimony:
A. Well, maybe I didn'tmaybe during the time that I was giving the testimony, you know, at that time maybe I didn't recall it when I answered that, you know.
Q. Well, of course...
A. That wasat that time that was to my knowledge
After his testimony in the Beavers trial, defendant was charged with the offense of perjury.
La.R.S. 14:123 provides:
Perjury is the intentional making of a false written or oral statement in, or for use in, a judicial proceeding, or any proceeding before a board or official, wherein such board or official is authorized to take testimony. In order to constitute perjury the false statement must be made under sanction of an oath or an equivalent affirmation, and must relate to matter material to the issue or question in controversy.
It is a necessary element of the offense that the accused knew the statement to be false; but an unqualified statement of that which one does not know or definitely believe to be true is equivalent to a statement of that which he knows to be false.
Whoever commits the crime of perjury shall be punished as follows:
(1) When committed on a trial for any felony, by imprisonment at hard labor for not more than ten years;
(2) In all other cases by a fine of not more than one thousand dollars, or by imprisonment, with or without hard labor, for not more than five years, or both.
La.R.S. 14:124 provides:
It shall constitute perjury whenever any person, having taken an oath required by law, or made an equivalent affirmation, swears or affirms any fact or state of facts material to the issue or question in controversy; and thereafter in the same or other proceedings, where such matter is material to the issue or question in controversy, swears or affirms in a manner materially contradictory of or inconsistent with his former sworn or affirmed statement. It shall not be necessary for the prosecution, in such case, to show which of the contradictory or inconsistent statements was false; but it shall be an affirmative defense that at the time he made them, the accused honestly believed both statements to be true.
This article shall only be applicable in cases where at least one of the contradictory or inconsistent statements was made *873 in, or for use in, a judicial proceeding or a proceeding before a board or official wherein such board or official is authorized to take testimony. [Emphasis added.]

ASSIGNMENT OF ERROR NO. 5
Defendant contends in this assignment of error that the trial court committed error in its refusal to grant a new trial on the basis that the verdict was not based on the law and the evidence.
This contention is initially based on the assertion that the jury was presented with no evidence indicating that the defendant knew either statement to be false at the time it was made. Defendant contends that the trial transcripts show nothing more than explainable inconsistency. Defendant additionally asserts that the verdict is unsupported by the evidence in light of the fact that the alleged perjured testimony is immaterial.
In reviewing the denial of a motion for new trial based on insufficiency of evidence, it must be determined whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime to be proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Williams, 389 So.2d 384 (La.1980). Thus, the issue presented in the instant case is whether any rational trier of fact [jury] could have found beyond a reasonable doubt from the evidence in this case that defendant intentionally made a false oral statement in a judicial proceeding under sanction of an oath relating to a matter material to the issue or question in controversy while knowing the statement to be false. We conclude from our review of the record that there is sufficient evidence to support a finding that defendant intentionally made a false statement in the Beavers trial under sanction of an oath relating to a matter material to the issue or question in controversy, i.e., whether or not a command to disperse was given. La.R.S. 14:123.
Defendant contends that the state presented no evidence to refute defendant's statement in the Beavers trial that at the time he made the prior statement in the Bell trial that "... at that time it was to my knowledge." Defendant further contends that solely through the introduction of the transcripts from the prior trials, he presented the affirmative defense that at the time he made both statements he honestly believed them to be true.
It is noteworthy in this discussion that defendant joined with the state in offering the pertinent portions of the transcripts from the earlier two trials into evidence. Not only did he not object to these offerings and any irregularities that might be contained therein, but the only defense which he offered was the introduction of these transcripts into evidence.
In the instant case, we find that the transcripts standing alone were insufficient to establish for a rational fact finder the affirmative defense "... that, at the time he made them, the accused honestly believed both statements to be true." There was no other evidence presented which tended to bear on the state of mind of the defendant at the time that he made either or both of the earlier statements. On the face of the record, the conflict between the two statements is apparentthey are diametrically opposed. This fact standing alone under a prosecution solely under La. R.S. 14:124 without further explanation from a defendant or other evidence is sufficient to prove that a defendant committed perjury on one of the two occasions when he testified inconsistently in prior court proceedings.
Although not mentioned by counsel for the defendant in brief or in argument or raised at the trial level, we note, on our own, that there would be an element of proof missing had defendant been prosecuted solely under La.R.S. 14:124 for making two prior inconsistent statements under oath. There is no evidence in the excerpts from the transcript offered into evidence from the Bell trial that an oath was administered to defendant. Although it is obvious that such an oath is administered to *874 witnesses in court proceedings, that portion of the transcript reflecting that such an oath was administered is missing. Therefore, we conclude absent such proof that a conviction solely based on La.R.S. 14:124 could not stand.
However, defendant was prosecuted under both La.R.S. 14:123 and 124. The theory of the state's case from its inception was that defendant told the truth at the Bell trial and perjured himself at the Beavers trial. The police officers in charge at the incident testified consistently and unequivocally at the instant trial that no such order was given prior to the eruption of the fighting. The record contains ample evidence for the jury to conclude that the defendant did not tell the truth at the Beavers trial while under oath. The testimony of the police officers was further corroborated by the prior inconsistent statement which was entered into evidence not only without objection but also at the behest of the defendant. Obviously, in this case, the state did not rely solely on La.R.S. 14:124 to obtain a conviction. Had it done so, there would have been no necessity for the testimony of the police officers that no command to disperse was ever given.
Therefore, viewing this portion of the evidence in the light most favorable to the prosecution, there is indeed ample evidence for a rational finder of fact to conclude that defendant knew that his statement made on March 13, 1980 during the Beavers trial was false at the time that he made it under oath.
As defendant correctly argues, for a statement to constitute perjury, it must relate to a matter material to the issue or question in controversy in a proceeding. Therefore, defendant argues that no rational trier of fact could have found defendant's testimony to be material. We initially note that materiality of false testimony is a matter of law for determination by the court; it is not a factual question for determination by the jury. State v. Petta, 359 So.2d 143 (La.1978); State v. Occhipinti, 358 So.2d 1209 (La.1978); State v. Smith, 126 La. 135, 52 So. 244 (1910). Thus, the court should have determined the issue of materiality and it was erroneous to submit that issue to the jury for its decision. Our inquiry in this regard thus becomes directed toward whether the testimony of defendant was related to certain material facts. If it was material as a matter of law, the trial court's error in submitting that issue to the jury becomes harmless and is not grounds for reversal. La.C.Cr.P. Art. 921.
Because our scope of review is not limited to an examination of the record to determine whether there is some evidence from which the trier of fact could have concluded that the false testimony was material, we have made an independent decision on the question of law of materiality, that is, whether as a matter of law the testimony was material. La.Const. of 1974 Art. V § 5(C). State v. Occhipinti, supra. After making this independent analysis, we conclude for the reasons set forth below that the false testimony in the Beavers trial was material and that the state has met its burden of proving this essential element of the crime. La.R.S. 15:271.
In the Beavers trial, Beavers attempted to prove that he had in fact complied with a police order to disperse and had left before the fighting began. See State v. Beavers, 394 So.2d at 1225. When defendant testified in the Beavers trial as a defense witness, he stated that a policeman with a long trench coat on had told the crowd to disperse while using some type of voice amplifier. This statement was totally consistent with the defense set forth by defendant Beavers and totally inconsistent with the testimony of the police officers in the instant case that no order to disperse was given.
We have previously held that false testimony given in an effort to attack another witness' credibility for impeachment purposes on a material issue can form the basis for a charge of perjury. See State v. Occhipinti, supra; State v. Smith, supra. In State v. Smith, we stated:
False testimony is deemed material not only when directly pertinent to the main *875 issue, but also when it has a legitimate tendency to prove or disprove any material fact in the chain of evidence. * * * Perjury may be assigned upon testimony going to the credit of a material witness in a cause, although such evidence be legally inadmissible and ought not to be received. So, also, perjury may be predicated on a false answer of a witness that he had never been convicted of a felony, as such answer affects his credibility, and is therefore material to the issue, provided the evidence of conviction is not too remote.
We now hold that false testimony given in an effort to support a theory of defense in a criminal case, albeit well founded or not, can form the basis for a charge of perjury because such testimony is material to a proper matter of inquiry which is clearly capable of influencing the fact finder in its decision concerning the offense charged. See United States v. Giarratano, 622 F.2d 153 (5th Cir. 1980). Certainly, the theory of the defense in the Beavers trial that Beavers obeyed an order to disperse falls within this ambit. The testimony of defendant was clearly material to a proper matter of inquiry and calculated to influence and capable of influencing the jury in its decision concerning the offense with which Beavers was charged.
We further hold that whether or not a command to disperse is given in accordance with La.R.S. 14:329.3, is always relevant and material in a prosecution under the provisions of La.R.S. 14:329.1 et seq.
We therefore conclude in the instant case that the record amply supports a jury finding that defendant was guilty of the crime of perjury.

ASSIGNMENT OF ERROR NO. 2
Defendant contends that the trial judge committed error in admitting certain testimony which was objected to as being hearsay and irrelevant. While conceding that these objections in and of themselves alone do not form the basis for reversible error, the defendant contends that the admission of this testimony constitutes reversible error because of the highly inflammatory nature of the statements.
The testimony in question related to answers given by Lt. Col. Dumigan regarding his contact with Samuel Upton, the alleged leader of the Black Muslims, at the time of the confrontation. On direct examination the following exchange occurred:
Q. Where was the noise coming from?
A. All the crowd that was there. There was (sic) several hundred there.
Q. Was there anything coming from the line, itself?
A. I don't remember lineuhanything coming from the line at that time. Uhlater onuhafter we'd been there a short time, they started chanting. I don't know what they were saying.
Q. Uh-huh.
A. Cause I really couldn'twasn't familiar with what they were saying. We were trying touhtalk to Upton to find out what the problem was and to cool it down, so to speak. Anduhwe began to realize that that was a waste of time, because uhtalking to him was like pushing a button. Uhno matter what you said, he'd come out with answers, like, the white man is the cause of all the trouble in the world. In fact he told me before...
At that point, defense counsel objected to the testimony. He argued that it was hearsay and totally irrelevant. The trial judge questioned the prosecutor concerning the relevancy of the testimony who replied that the testimony was relevant to prove whether or not the defendant was lying when he said an order to disperse was given. The prosecutor further stated that the testimony related to whether such an order was or was not given. The objection was overruled after which the prosecutor continued as follows:
Q. All right, go ahead.
A. Where was I? Uhwe asked `em uhhe asked us what we intended to do and I told him, like I say, to haul *876 the three cars off and disperse the crowd. And he said that we weren't going to do anything of the sort. Anduhhe said before the day's over one of us is going to be dead.
Defense counsel again objected to the testimony on the same grounds urged previously, and the trial court sustained the objection to the last question and answer on the grounds of irrelevancy.
It is well settled that hearsay evidence is inadmissible in criminal trials. La. R.S. 15:434 and 463; State v. Hennigan, 404 So.2d 222 (La.1981). As we stated in Hennigan:

State v. Martin, 356 So.2d 1370 at 1373-1374 (La.1978) adopted Professor McCormick's definition of hearsay evidence:
Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter. C. McCormick, Evidence. Section 246 (Cleary ed. 1972).
[State v.] Toomer [395 So.2d 1320 (La. 1981)] noted that evidence is not hearsay when offered to prove only that it occurred. State v. Hatcher, 372 So.2d 1024 (La.1979), or that a conversation took place. State v. Ford, 368 So.2d 1074 (La. 1979).
Clearly, in the instant case, the assertion was not made to show the truth of the matters asserted therein; it was only offered to prove that the conversation occurred. Therefore, these statements are not hearsay.
However, defendant further argues that the statements complained of were clearly irrelevant to the charge of perjury. Relevant evidence tends to show or negate the commission of the offense or intent. La.R.S. 15:441. Thus, relevancy is determined by the purpose for which the evidence is offered. La.R.S. 15:442. See also State v. Weems, 358 So.2d 285 (La. 1978). It is well settled that a determination of relevance lies within the discretion of the trial judge and will not be disturbed absent a clear showing of abuse of that discretion. State v. Miles, 402 So.2d 644 (La.1981). In the instant case, the trial court found the first statement to be relevant and the second statement to be irrelevant. From our reading of the transcript, we cannot state that it abused the wide discretion granted to it in regard to such rulings.
Defendant concedes that these rulings alone do not constitute reversible error. However, he asserts that the highly inflammatory nature of the statements renders the jury's exposure to them reversible error calling for a remand. Initially, it is noteworthy that defense counsel only objected to the complained of testimony at trial as being hearsay and irrelevant. There was no contemporaneous objection made on the grounds that the statements were highly inflammatory or were prejudicial in nature. Thus, the provisions of La.C. Cr.P. Art. 841, which require a contemporaneous objection and the grounds therefor to preserve appellate review of a trial error were not satisfied. We have held that the grounds of counsel's objections must be sufficiently brought to the attention of the trial judge to allow him the opportunity to make the proper ruling and correct any claimed prejudice to the defendant. State v. Harris, 414 So.2d 325 (La.1982); State v. Davis, 357 So.2d 1125 (La.1978). Therefore, a new ground for objection cannot be presented for the first time on appeal. State v. Harris, supra; State v. Davis, supra; State v. Monroe, 397 So.2d 1258 (La. 1981); State v. Bodley, 394 So.2d 584 (La. 1981). It is settled that a new basis for an objection cannot be substituted on appeal and that only the grounds made known to the trial judge at the time of his ruling may be relied on by this court. State v. Wright, 410 So.2d 1092 (La.1982); State v. Baylis, 388 So.2d 713 (La.1980); State v. Woodard, 387 So.2d 1066 (La.1980). Thus, this argument is untimely and not properly before us for review.
*877 Furthermore, our review of the record convinces us that the rulings of the trial court in this regard did not affect substantial rights of the defendant; therefore, there is no reversible error. La.C.Cr.P. Art. 921.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 4
In this assignment of error, defendant contends that the trial court erred when it overruled defense objections to certain jury instructions.
Defendant contends that one of the main issues of this trial was the materiality of the statements made by the defendant. The trial court refused defense counsel's verbal request that the last paragraph of the comments to La.R.S. 14:124 be included in the court's charge to the jury as a special explanatory instruction on the meaning of the word "materiality." In response to defendant's request, the court stated that it would read La.R.S. 14:124 and would give any instruction presented to the court by defendant that had been approved by the Supreme Court. To this statement defense counsel replied: "Very well, Judge, I..." No objection was made, and no special instruction was presented to the court for its consideration. Later in the discussion with the court, defense counsel again asked for "... some kind of instruction or definition as to what is material." He later asked that George Pugh's definition of materiality be given. Upon further questioning by the court, defense counsel replied that he did not know where the definition came from or what it contained. At no point did defense counsel object or provide the trial court with other charges. Therefore, defense counsel waived any objection to the jury charge insofar as it relates to the failure to include a special explanatory instruction on the meaning of the word "materiality" when he failed to object to the court's ruling and when no special charge was presented to the court containing such an explanation. State v. Davis, 380 So.2d 607 (La.1980). Furthermore, such an instruction would have been incorrectly included in light of our prior holdings that "materiality" is a question for the court rather than the fact finder.
Secondly, defendant objects to the inclusion in the charge of the provisions of La.R.S. 14:329.3, the statute on commands to disperse. Prior to charging the jury, the trial court informed the defendant and the state that it intended to instruct the jury on La.R.S. 14:329.3. Defense counsel objected to its inclusion in the charge arguing that Beavers was not charged with its violation and the statute was not a responsive verdict to the crime of participating in a riot. It is further contended that the finding of materiality was within the province of the jury rather than the judge and the reading of the statute unduly influenced the jury to such an extent that its fact finding province was invaded.
In addition to the reading of the statute in question, the trial court also made the following statement:
You must accept what I tell you is the law. And if you find what I tell you is the law is inconsistent with what either attorney had told you you must disregard what he has told you on that area of the law and accept what I tell you as being correct. I also, am giving you the laws that are applicable and these are the only laws that should apply to your deliberation.
Defendant contends that in its context, this statement served to inform the jury that anything that they were told previously regarding materiality should be disregarded, while refusing to offer any other explanation as to materiality. Defendant further argues that the jury charges when taken as a whole, failed to make the jury understand that it carried a very great burden in determining the materiality of the inconsistent testimony.
Initially, we note, as discussed in connection with assignment of error no. 5, supra, that the materiality of false testimony is a matter of law for determination by the court and is not a factual question for determination by the jury. Since, from an independent analysis, we have concluded *878 that the testimony relating to the compliance with a formal order to disperse was material and relevant in this prosecution and because La.R.S. 14:329.3 explains how the command to disperse shall be given, that is, in a manner reasonably calculated to be communicated to the assemblage by any law enforcement or peace officer or public official responsible for keeping the peace if he reasonably believes that a riot is occurring or is about to occur, it merely served as an explanation of what is required to constitute a command to disperse and who may give such a command. Thus, its inclusion was not clearly erroneous or prejudicial to the defendant.
We have repeatedly held that a jury charge must be considered as a whole and have declined to reverse a conviction on the ground of erroneous instruction unless the disputed portion, when viewed in light of the entire charge is erroneous and prejudicial. State v. Dupre, 369 So.2d 1303 (La. 1979); State v. Dardar, 353 So.2d 713 (La. 1977). State v. George, 346 So.2d 694 (La. 1977). Under the facts presented in the instant case, the charge when considered in its entirety was neither erroneous nor prejudicial.
This assignment of error is without merit.

DECREE
For the foregoing reasons, the conviction and sentence of defendant are affirmed.
DIXON, C. J., dissents.
NOTES
[*] Judges William Norris, III, and Fred C. Sexton, Jr., of the Court of Appeal, Second Circuit and Judge Robert L. Lobrano of the Court of Appeal, Fourth Circuit, participated in this decision as Associate Justices pro tempore, joined by Chief Justice John A. Dixon, Jr., and Associate Justices Walter F. Marcus, Jr., Fred A. Blanche, Jr., and Harry T. Lemmon.
[1] Defendant was adjudged to be a third felony offender after a habitual offender proceeding. Although one of defendant's assignments of error was that the sentence imposed was excessive, defendant neither briefed nor argued this issue before the court; therefore we consider this assignment to be abandoned and do not address it.
[2] State v. Beavers, 364 So.2d 1004 (La.1978), 394 So.2d 1218 (La.1981); State v. Bell, 315 So.2d 307 (La.1975), 346 So.2d 1090 (La.1977); State v. Williams, 354 So.2d 562 (La.1978); State v. Eames, 365 So.2d 1361 (La.1978).
[3] The pertinent sections of La.R.S. 14:329.1 through 329.8 provide as follows:

§ 329.1 Riot
A. A riot is a public disturbance involving an assemblage of three or more persons acting together or in concert which by tumultuous and violent conduct, or the imminent threat of tumultuous and violent conduct, results in injury or damage to persons or property or creates a clear and present danger of injury or damage to persons or property.
§ 329.2 Inciting to riot
Inciting to riot is the endeavor by any person to incite or procure any other person to create or participate in a riot.
§ 329.3 Command to disperse; who may give; failure to comply
Any law enforcement or peace officer or public official responsible for keeping the peace may issue a command to disperse under the authority of R.S. 14:329.1-14:329.8 if he reasonably believes that riot is occurring or about to occur. The command to disperse shall be given in a manner reasonably calculated to be communicated to the assemblage.
Whoever willfully fails to comply with a lawful command to disperse shall be punished in accordance with the provisions of R.S. 14:329.7.
§ 329.7 Punishment
A. Whoever willfully is the offender or participates in a riot, or is guilty of inciting a riot, or who fails to comply with a lawful command to disperse, or who is guilty of wrongful use of public property, or violates any other provision hereof shall be fined not more than five hundred dollars or be imprisoned not more than six months, or both.
B. Where as a result of any willful violation of the provisions of R.S. 14:329.1-14:329.8 there is any serious bodily injury or any property damage in excess of five thousand dollars, such offender shall be imprisoned at hard labor for not more than five years.
C. Where, as a result of any willful violation of the provision of R.S. 14:329.1-14:329.8, the death of any person occurs, such offender shall be imprisoned at hard labor for not to exceed twenty-one years.
§ 329.8 Applicability of other acts
The provisions of R.S. 14:329.1-14:329.8 shall be supplemental and in addition to any other applicable laws of this state.