441 So.2d 1281 (1983)
STATE of Louisiana
v.
Mose ROBERTSON, Jr.
No. 83-KA-0258.
Court of Appeal of Louisiana, First Circuit.
November 22, 1983.
Rehearing Denied December 22, 1983.
Writ Denied March 9, 1984.
*1283 James L. Alcock, Asst. Dist. Atty., Houma, for plaintiff.
Charles Gary Blaize, Indigent Defender's Office, Houma, for defendant.
Before LOTTINGER, EDWARDS and ALFORD, JJ.
EDWARDS, Judge.
Defendant, Mose Robertson, Jr., was indicted for first-degree murder. The indictment was amended before trial to second-degree murder in violation of LSA-R.S. 14:30.1. Defendant was convicted by jury and sentenced to life imprisonment without benefit of probation, parole or suspension. Defendant appeals his conviction, alleging four assignments of error. We affirm.
The week before Thanksgiving in 1981, Robertson was released from the Terrebonne Parish jail. Rev. Tommie Lee Bates invited Robertson to move in with him at his home in Houma, Louisiana, which Robertson did shortly after Thanksgiving.
On the evening of November 28, Robertson and the Reverend became embroiled in a violent confrontation. In the ensuing fight, Robertson grabbed a large kitchen knife from the dining room table and stabbed the Reverend 29 times, killing him.
Robertson took the Reverend's car keys from the kitchen table and left the house in the Reverend's station wagon. Somewhere between the dining room and the garage where the car was parked, he dropped the knife. He drove to a parking lot behind Yots' Steak House on Grand Caillou Road and parked the car. He walked to the local TG & Y convenience store where he purchased a camera and a set of new western wearboots, jeans, a shirt, a vest and a hat. He returned to the car and changed into the clothes. He then walked across the street to the Seabreeze Restaurant where he bought one beer and had his picture taken with some of the patrons. He stayed there until about 10:00 p.m. when he called a taxi and left for Morgan City. He paid the cab fare of $55.00 in cash and checked into a local motel for the night.
On the next day, the 29th, he caught a bus to New Orleans, then to Tallulah, Louisiana, where the city police arrested him.

ASSIGNMENT OF ERROR NO. 1
As assignment of error No. 1, defendant contends that the trial court erred in admitting Sherry Kirkland as an expert in the field of serology. Specifically, defendant contends that because Ms. Kirkland was unable to derive the word "serology," she was not qualified to testify on bloodstain analysis.
The competency of an expert witness is a question of fact within the sound discretion of the trial judge and his ruling will not be disturbed unless clearly wrong. State v. Michel, 422 So.2d 1115 (La.1982); State v. Staton, 433 So.2d 222 (La.App. 1st Cir.1983).
Ms. Kirkland has a Bachelor of Science degree in biology with a minor in chemistry. She has been employed by the Jefferson Parish Sheriff's Office as a forensic biologist for the past year and a half. She underwent a four-month training program at the New Orleans Crime Laboratory before joining the biology section of the crime lab in Jefferson. She recently attended a three-hour graduate course in biochemical blood-stain analysis at the F.B.I. Academy.
She performs serological tests on blood stains and body fluids as a part of her daily routine. On cross-examination, she testified on the difference between Type "A" blood (containing proteins called "antigens") and Type "O" blood (containing no "antigens") and described the procedures for determining the difference between human and animal blood. She has qualified as *1284 an expert in serology in the St. Charles Parish district court and in all eleven divisions of the Twenty-Fourth Judicial District of Jefferson.
Based on the foregoing qualifications, the trial court did not abuse its discretion in accepting Mrs. Kirkland as an expert in serology. This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 2
As assignment of error No. 2, defendant contends that the trial court erred in allowing State witness Vickie Lee Scott, the cab driver who drove Robertson to Morgan City, to testify on allegedly irrelevant and inflammatory matters.
Ms. Scott testified at trial that Robertson paid his fare of $55.00 in cash. When the State asked if she recalled the denominations of bills that he paid her with, defense counsel objected. After the jury was removed, defendant argued that the elements of the crime of theft were irrelevant to a prosecution of second-degree murder under the first paragraph of LSA-R.S. 14:30.1,[1] and that the testimony was inflammatory as referring to an element of first-degree murder.
The State responded, arguing chiefly that evidence of a robbery was relevant to show defendant's motive for the murder. The State also argued that although its prosecution of the case was indeed based upon the first paragraph of Article 30.1, the State could nonetheless proceed to prove its case under the second paragraph, of which robbery constitutes one of the elements.
The trial court overruled defendant's objection and allowed Ms. Scott to answer the question.
Relevant evidence is generally defined as that evidence intending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent. LSA-R.S. 15:441. The relevancy of evidence must be determined by the purpose for which it is offered. LSA-R.S. 15:442. The trial court has wide discretion in determining the relevancy of evidence, and its determination will not be overturned absent a clear showing of abuse. State v. West, 419 So.2d 868 (La.1982); State v. Albert, 430 So.2d 1279 (La.App. 1st Cir.1983).
Moreover, in State v. Brown, 398 So.2d 1381,1385 (La.1981), the Louisiana Supreme Court said that "the probative value of the crime of car theft for the purpose of establishing motive outweighed the prejudicial effect" on the defendant before the jury in a prosecution for attempted first-degree murder of a deputy sheriff. The court defined motive as "the cause or reason that moves the will and induces action for a definite result." Id. at 1384.
In Brown, the defendant had objected to the introduction of such testimony as calling for evidence of other crimes inadmissible under LSA-C.Cr.P. art. 770. The court held that proof of motive is admissible as an exception to art. 770.
The reasoning in Brown applies equally to the situation in the present case, although defendant has not alleged a violation of art. 770. Evidence that defendant, recently released from prison and destitute, was suddenly in possession of a substantial amount of money is relevant to show his motive for committing murder and outweighs any prejudicial effect it may have had. The trial court did not abuse its discretion in allowing the testimony into evidence. This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 3
As assignment of error No. 3, defendant contends that the trial court erred in admitting into evidence the large kitchen knife, purported to be the murder weapon, allegedly because the State failed to establish *1285 sufficient connexity between the knife and the crime.
Before demonstrative evidence can be admitted into evidence it must be shown that, more probably than not, the evidence is connected to the case. That foundation can be laid by establishing a chain of custody of the evidence or by visual identification. Once that foundation is established, the weight to be given the evidence is a question for the jury. State v. Landry, 388 So.2d 699 (La.1980).
According to the testimony presented at trial, on November 29, Morris Scott, the Reverend's roommate, found in the driveway of the victim's house a large kitchen knife similar to three such knives owned by the Reverend and kept in the kitchen drawer of the house. He pointed out the knife to Dianne Bates, the victim's daughter-in-law, who notified Detective Freddie Williams, one of the investigating officers at the scene of the crime. Detective Williams retrieved the knife from the driveway and delivered it to Detective Morris Duplantis, the arresting and chief investigating officer.
Detective Duplantis initialed in pencil a piece of tape and attached it to the handle of the knife for identification. He then sealed the knife in a plastic evidence bag and gave it to Detective Price with orders to deliver it to the crime lab for analysis. Sherry Kirkland received the knife from Detective Price on December 1, 1981, and performed a blood-stain analysis which revealed the presence of human blood on the knife. The amount of the blood found was insufficient for typing. When her analysis was completed, she sealed the knife in an evidence locker at the lab, where the knife remained until trial.
At trial, the penciled initials were, inexplicably, no longer on the tape. However, the knife presented at trial was positively identified by the witnesses as the one found in the yard, marked for identification, and delivered to the crime lab for analysis.
These facts amply demonstrate both a chain of custody and a visual identification of the knife establishing a more probable than not connection between the knife and the crime. The trial court did not abuse its discretion in admitting the knife into evidence. This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 4
As assignment of error No. 4, defendant contends that the trial court erred in failing to give one of its previously prepared instructions to the jury.
Prior to submission of the case for argument, the trial court conferred with both counsel on instructions to the jury. At that time, an agreement was reached that the court would instruct the jury in a special written charge[2] to disregard the second paragraph of LSA-R.S. 14:30.1. After closing argument, the trial court did not read the special written charge to the jury, but instead read the entire statute to the jury.
Defense counsel objected to this omission after the jurors retired for deliberation. The court explained on the record that because the State alleged in its closing argument the crime of robbery, an element of second-degree murder under the second paragraph, the instruction would no longer have been appropriate. The court further explained that since the defendant was charged by a short form indictment without detailing the facts or circumstances surrounding the offense, the instruction to disregard the second paragraph would have constituted an impermissible comment on the evidence in violation of LSA-C.Crim.P. art. 806.[3]
*1286 The trial court is required to charge the jury in a criminal prosecution on all law applicable to the case. Article 807, however, gives the State or the defendant the right to request special written charges. Under that article the trial court is required to give the special written charge only "if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent." If the special charge requires any explanation or qualification, the court in its discretion may refuse to give the charge. See State v. Smith, 414 So.2d 1237 (La.1982); State v. McZeal, 352 So.2d 592 (La.1977).
In the present case, the requested charge would have required some explanation or some further instruction by the trial court that the robbery evidence either was introduced for the limited purpose of establishing defendant's motive or was to be disregarded altogether. Thus, it was within the trial court's discretion to give the special charge. Since the general charge given by the trial court was a correct and pertinent statement of the law applicable to the crime of second-degree murder, the trial court did not err in refusing to give the special charge. This assignment lacks merit.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] LSA-R.S. 14:30.1 provides in pertinent part:

Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2) When the offender is engaged in a perpetration or attempted perpetration of aggravated rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm.
[2] The special written charge reads as follows:

It is the contention of the State that the defendant in this proceeding violated Paragraph 1 of the Statute in that is [sic] alleged that he killed a human being while having a specific intent to kill or to inflict great bodily harm. We are, therefore, not concerned with the second paragraph of Article 30.1 which deals with the killing of a human being when the offender is engaged in the perpetration of certain enumerated crimes.
[3] LSA-C.Crim.P. art. 806 provides:

The court shall not charge the jury concerning the facts of the case and shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been approved, not proved, or refuted.