LeBLANC, Judge.
Lillian Tarver was charged by indictment with second degree murder, in violation of La.R.S. 14:30.1. She was tried by jury and found guilty of manslaughter, a violation of La.R.S. 14:31. She received a sentence of seventeen years at hard labor. The defendant has now appealed, alleging eight assignments of error.[1] FACTS:
Shortly after 4:00 A.M. on June 21, 1986, the defendant shot and killed her husband, Scott Tarver, with his .357 magnum pistol after a confrontation which occurred in the Holiday Inn parking lot in Slidell, Louisiana. The defendant and the victim had been married approximately five years, but the victim had left her several days earlier. The defendant had four children by two previous marriages, but the defendant and the victim had no children together.
At the trial, the defendant testified that the victim had beaten her frequently and, on several occasions, she required medical attention as a result of this mistreatment. The defendant’s two older sons, Patrick Meteye, age eighteen, and Shelton Meteye, age sixteen, also testified that the victim had occasionally abused them, although Patrick also characterized the victim as a good stepfather. Additionally, Patrick testified about a beating which the victim had inflicted on Ronald Creamer, the defendant’s second husband. However, when Ronald Creamer[2] began to testify about the details of this fight, the prosecutor objected; and the trial court sustained the objection.
The confrontation which resulted in this shooting incident began in the early morning hours of June 21, when the defendant observed the victim entering the City *604 Lights Lounge with Cindy Webster, a waitress who worked at the Holiday Inn. The defendant confronted them at their table and, after exchanging words with the victim, stated to Cindy Webster: “Don’t you know that he’s a married man?” Cindy Webster went to the ladies room, the victim walked away, and the defendant left the bar and went outside. She went to the victim’s truck, opened it, and removed his cowboy hat, .357 magnum, checkbook, check register, paycheck, and other personal papers. She put these items in her car, a Chevette, and then went back inside the City Lights Lounge and informed the victim of what she had just done. He allegedly replied: “If you did what you just told me you did, I’m going to get you for it.” The defendant punched the victim in the face twice and went back outside to her car, where she began crying and eventually vomited. The defendant took a night stick which she kept in her car and broke the rear window of the victim’s truck. She then went home.
Approximately an hour later, the defendant returned to the City Lights Lounge with her sons, Patrick and Shelton. She was going to return the items to the victim, but she observed a security guard in the parking lot and decided to return home. When she returned home, she placed the victim’s cowboy hat on the stove and turned it on; but Patrick took the hat off the stove. The victim then tore up the checkbook, check register, paycheck, etc. and cut the victim’s hat with a pair of scissors. She threw all of these items in a kitchen garbage bag and decided to return to the City Lights Lounge.
The defendant again returned to the City Lights Lounge accompanied by her son, Shelton. The garbage bag containing the items which she had destroyed was in the back seat of her car. As she entered the parking lot, the victim and Cindy Webster were standing in the parking lot; and Cindy Webster was getting into her car. When the defendant stopped, her car was in neutral and the engine was still running. According to the defendant, the victim was angry because she had broken his truck window. She informed him that she had also taken his gun, and she reached into her purse to return it to him when he suddenly attacked her. The victim grabbed her hair and punched her as she was sitting in her car. When Shelton attempted to intervene, the victim dragged him out of the car, beat him, kicked him, and threw him to the parking lot. When the victim approached the defendant again, she shot him. He backed up but then began to approach her again, so she fired at least two more shots. Two bullets struck the victim, and he walked a few feet away before falling behind his truck.
The defendant testified that, after the shooting, she approached the victim, knelt down, picked up his head and apologized to him. Shelton also testified that, after the shooting, the defendant cradled the victim in her arms and cried. However, state witness Cindy Webster testified that, immediately after the shooting, the defendant approached her, cursed at her, and threatened to shoot her too if she did not leave. James Hulsey, a bystander, testified that he attempted to render first aid to the victim immediately after the shooting. He testified that the defendant kept screaming that she had shot and killed the victim, but she never approached him and cradled his head in her arms.
St. Tammany Parish Sheriff’s deputies Kenneth Meyers and Troy Mitchell were the first law enforcement officers to arrive at the scene. Both deputies testified that they heard the victim say: “I shot him. I shot him. I killed the m-r f-r.” Deputy Meyers took possession of the .357 magnum and inventoried the contents of the defendant’s Chevette. The Chevette was later released to the victim’s father, John Tarver.
ASSIGNMENTS OF ERROR NUMBERS THREE AND FOUR:
In assignments of error three and four, defendant contends the trial court erred in admitting into evidence State Exhibit 14, which consisted of the garbage bag and its contents.
In assignment three, defendant complains that the prosecutor failed to timely *605 comply with her discovery request thereby depriving her of an opportunity to inspect or physically test Exhibit 14 prior to trial. In assignment four, defendant contends the trial court erred in allowing this evidence to be admitted without a proper foundation establishing a chain of custody. She also argues that the evidence contained in Exhibit 14 was altered. Finally, defendant contends that she was prejudiced by the above alleged errors.
The instant trial began with the selection of the jury on Wednesday, January 21, 1987. The first state witnesses were called to testify on Wednesday afternoon. The controversy forming the basis for these two assignments of error occurred on Thursday, January 22, during the prosecutor’s direct examination of Kenneth Meyers, the St. Tammany Parish Sheriffs deputy who had inventoried the defendant’s Chevette. When the prosecutor attempted to introduce into evidence State Exhibit 13, the inventory list, defense counsel objected. In fact, defense counsel was objecting to State Exhibit 14, a garbage bag containing the victim’s cowboy hat, which had been ripped and/or cut into pieces and the victim’s paycheck, checkbook, check register, and other personal papers, which had also been tom into pieces. Defense counsel objected that this evidence had not been listed in the prosecutor’s answers to his discovery motion. The prosecutor replied that this evidence had been in the possession of state witness John Tarver, the victim’s father, and that, although the prosecutor was aware of this evidence, he did not realize its significance until Monday, January 19, when discussing the case with John Tarver. The arguments of counsel indicate that on Monday, January 19, the prosecution decided to introduce this evidence at trial and that he informed defense counsel of the existence of this evidence on the first day of trial, Wednesday, January 21, after the jury had been sworn but before the first witness was called to testify.
La.Code Crim.P. art. 718 provides, in pertinent part:
Subject to the limitation of Article 723, on motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect, copy, examine, test scientifically, photograph, or otherwise reproduce books, papers, documents, photographs, tangible objects, buildings, places, or copies or portions thereof, which are within the possession, custody, or control of the state, and which:
$ * * * 3jC
(2) are intended for use by the state as evidence at the trial, ...
From the trial testimony of the defendant, John Tarver, and Deputy Meyers, it is apparent that the tom cowboy hat, checkbook, check register, paycheck, etc., were originally placed by the defendant into a plastic garbage bag which contained some items of kitchen garbage, such as an empty plastic milk jug. When Deputy Meyers inventoried the Chevette, he thought this plastic bag contained ordinary garbage. Under the circumstances, the prosecutor’s failure to list this evidence in its discovery answers was excusable, since the prosecutor did not realize the evidentiary significance of this evidence until talking with John Tarver shortly before the trial.
La.Code Crim.P. art. 729.3 provides:
If, subsequent to compliance with an order issued pursuant to this Chapter and prior to or during trial, a party discovers additional evidence or decides to use additional evidence and such evidence is or may be, subject to discovery or inspection under the order issued, he shall promptly notify the other party and the court of the existence of the additional evidence, so that the court may modify its previous order or allow the other party to make an appropriate motion for additional discovery or inspection.
The defendant claims that she was prejudiced by the prosecutor’s failure to disclose the existence of this evidence in that she was unable to thoroughly examine this evidence which she alleges was altered by John Tarver. We note that the prosecutor could have notified the defense that he intended to introduce this evidence at the trial sooner than he did. Nevertheless, the defense was notified before the first wit *606 ness was sworn and one day before the evidence was admitted, which gave them a short but sufficient time to examine the contents of State Exhibit 14. Furthermore, if the defense had been as anxious to examine this evidence as they now claim, they could have requested a recess for this purpose, which they did not do. Under the circumstances, we conclude that the prosecutor “promptly” notified defense counsel of the existence of State Exhibit 14 pursuant to La.Code Crim.P. art. 729.3.
We now turn to the defendant’s argument that State Exhibit 14 should not have been admitted into evidence because the prosecution failed to lay the proper foundation. Specifically, defendant argues that John Tarver admitted he altered the contents of State Exhibit 14 and, therefore, there was a chain of custody problem with this evidence.
Before demonstrative evidence can be admitted into evidence, it must be shown that, more probably than not, the evidence is connected to the case. That foundation can be laid by establishing a chain of custody of the evidence or by visual identification. Once that foundation is established, the weight to be given the evidence is a question for the jury. State v. Robertson, 441 So.2d 1281, 1285 (La.App. 1st Cir.1983), writ denied, 446 So.2d 314 (1984).
At the trial, it was established that the defendant’s Chevette was inventoried by Deputy Meyers- and later released to John Tarver. Mr. Tarver testified that he discovered a garbage bag in the Chevette. When he looked inside it, he noticed that the victim’s cowboy hat, checkbook, check register, paycheck, etc. were inside the bag, as well as some items of garbage, including a plastic milk container. He testified that he separated the items of evidence from the garbage, placed them in a new garbage bag, and then discarded the original garbage bag and the ordinary garbage which it contained. Furthermore, the defendant also identified the cowboy hat, checkbook, check register, paycheck, etc. and admitted that she tore up all of the papers, tried to bum the hat on the stove, and finally made one cut in the hat with a pair of scissors. These items were visually identified by Mr. Tarver and the defendant, and, therefore, it was not necessary to establish a chain of custody in order to introduce them into evidence.
The defendant focused on the chain of custody argument because she insisted that, while she tore up all the papers, she did not damage the hat ás badly as it now appeared. The defense has intimated, although not directly argued, that Mr. Tar-ver, or some other person, might have further damaged the victim’s cowboy hat. However, this evidence was properly admitted, and the issue of the hat’s condition at the time of the offense was a matter of the weight to be accorded this evidence by the jury. State v. Robertson, supra.
For the above reasons, these assignments of error are without merit.
ASSIGNMENT OF ERROR NUMBER FIVE:
In this assignment of error, the defendant contends that the trial court erred in ruling that a defense witness, Ronald Creamer, would not be allowed to testify about the details of a prior beating which he had received from the victim. After a few preliminary questions, Ronald Creamer testified that he knew the victim and that he had had a previous physical encounter with the victim. At this point, however, the prosecutor objected to any further testimony on this subject and the trial court sustained this objection.
The defendant in this case argued that she acted in self-defense and/or in defense of her son, Shelton Meteye. When self-defense is raised as an issue by the defendant, the state has the burden of proving, beyond a reasonable doubt, that the homicide was not perpetrated in self-defense. State v. Garcia, 483 So.2d 953, 956 (La.1986).
La.R.S. 15:482 provides:
In the absence of evidence of hostile demonstration or of overt act on the part of the person slain or injured, evidence of *607 his dangerous character or of his threats against accused is not admissible.
The defendant and her son, Shelton Me-teye, testified that, immediately before the shooting occurred, the victim threatened the defendant and attacked her as she was seated in her car. When Shelton attempted to defend his mother, the victim pulled him from the car, beat him, kicked him, and then threw him to the pavement. When the victim again approached the defendant, she shot him. This testimony constituted appreciable evidence of an overt act by the victim. The trial court erred in ruling that Ronald Creamer would not be allowed to testify further about details of the beating which he received from the victim. Such specific hostile acts against others are admissible to prove the reasonableness of the defendant’s apprehension. See State v. Lee, 331 So.2d 455 (La.1975).
Although Ronald Creamer was not allowed to testify as to the details of this beating by the victim, the jury was aware from his testimony that a physical encounter had occurred. Furthermore, the defendant’s son, Patrick Meteye, testified that he and the defendant were present on the occasion of this beating. He testified that the victim kicked and beat up Ronald Creamer in their yard and that, when the victim had finished, Ronald Creamer’s white T-shirt “was red with blood, the whole thing.” While Ronald Creamer’s testimony about this beating would have been relevant, it also would have been cumulative, since Patrick had previously testified about this incident. Furthermore, the defendant, Patrick, and Shelton each testified about hostile acts which the victim had committed against them in the past. If the jury was not persuaded by the testimony about the victim’s prior acts of aggression against the defendant and her sons, combined with the testimony of Patrick concerning the victim’s fight with Ronald Creamer, it would not have rendered a different verdict after hearing the cumulative testimony of Ronald Creamer concerning the details of this beating. For these reasons, we find that, although the trial court erred in refusing to allow Ronald Creamer to testify concerning the details of this beating by the victim, the error was harmless beyond a reasonable doubt. See State v. Martin, 458 So.2d 454, 459 (La.1984); State v. Pierce, 422 So.2d 1157 (La.1982).
This assignment of error is without merit.
ASSIGNMENTS OF ERROR NUMBERS SEVEN AND EIGHT:
In these assignments of error, the defendant contends that the trial court erred in imposing an excessive sentence and in failing to comply with the sentencing guidelines of La.Code Crim.P. art. 894.1.
The Code of Criminal Procedure sets forth the factors which must be considered by the trial court before imposing sentence. La.Code Crim.P. art. 894.1. The trial court need not recite the entire checklist of Article 894.1, but the record must reflect that it adequately considered the guidelines. State v. Jennings, 479 So.2d 639 (La.App. 1st Cir.1985). In light of the criteria expressed by Article 894.1, a review of the individual excessiveness should consider the circumstances of the crime and the trial court’s stated reasons and factual basis for its sentencing decision. State v. Lewis, 489 So.2d 1055, 1061 (La.App. 1st Cir.), writ denied, 493 So.2d 1218 (La.1986).
Although a sentence falls within statutory limits, it may be excessive. State v. Sepulvado, 367 So.2d 762 (La.1979). However, the trial court has wide discretion in the imposition of sentences, and a sentence within statutory limits will not be set aside in the absence of an abuse of discretion. State v. Johnson, 486 So.2d 853 (La.App. 1st Cir.1986).
Reviewing the Article 894.1 guidelines, the sentencing record reflects that the trial court considered both aggravating and mitigating circumstances. The trial court noted that the defendant was a first felony offender and did not have a prior criminal record. The trial court observed that incarceration would be a hardship for the defendant and her children. However, the trial court also cited a number of aggravating factors. The trial court noted *608 that the defendant should have contemplated that her conduct would have caused serious harm. The trial court stated that restitution or compensation was not possible. Finally, the trial court concluded that the defendant needed correctional treatment and that any lesser sentence would deprecate the serious nature of the crime.
Before imposing sentence, the trial court reviewed the facts of the offense in considerable detail. The trial court noted that the defendant was “a battered wife” but suggested that a separation and divorce was the way to resolve that problem, rather than a homicide. While reviewing the facts of the offense, the trial court noted that it was the defendant who kept confronting the victim and that she could have avoided the situation by staying at home that night. The trial court concluded that the victim had not induced or facilitated the commission of this offense and that the victim had not provoked the defendant.
In her brief, the defendant argues that the trial court ignored the Article 894.1 sentencing factors and ignored the jury’s finding of manslaughter. After the trial court reviewed the facts of the offense, it concluded that the evidence supported a conviction of second degree murder, rather than manslaughter, because the defendant had had ample time for her “hot blood to have cooled.” This observation was a proper sentencing consideration. See State v. Darby, 502 So.2d 274, 280 (La.App. 3rd Cir.1987); State v. Heath, 447 So.2d 570, 577 (La.App. 1st Cir.), writ denied, 448 So.2d 1302 (La.1984). Furthermore, the factors cited above indicate that the trial court thoroughly complied with the sentencing guidelines of Article 894.1.
For her conviction of manslaughter, the defendant was exposed to a maximum sentence of twenty-one years at hard labor. See La.R.S. 14:31. She received a sentence of seventeen years at hard labor for this conviction. Considering the circumstances of this offense and the reasons for sentencing given by the trial court, we find no abuse of discretion in the sentence imposed.
This assignment of error is without merit.
CONVICTION AND SENTENCE AFFIRMED.

. Assignments of error numbers one, two and six were not briefed on appeal and, therefore, are considered abandoned. Uniform Rules— Courts of Appeal, Rule 2-12.4.

. The record indicates that the defendant’s ex-husband was Ronald Kramer. However, the pre-sentence investigation report and the briefs by both the State and the defense refer to him as Ronald Creamer.