| | | |
|---|---|---|
| STATE OF LOUISIANA | * | NO. 2025-KA-0074 |
| VERSUS | * | |
| | | COURT OF APPEAL |
| JORDAN MITCHELL | * | |
| ZAYKIS BOLDEN | | FOURTH CIRCUIT |
| DYLAN JOHNSON | * | |
| | | STATE OF LOUISIANA |

* * * * * * *


APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 555-643, SECTION "E"
Judge Rhonda Goode-Douglas,
* * * * * *
**Judge Sandra Cabrina Jenkins**
* * * * * *
(Court composed of Judge Daniel L. Dysart, Judge Sandra Cabrina Jenkins, Judge
Tiffany Gautier Chase)


Mary Constance Haynes
LOUISIANA APPELLATE PROJECT
P.O. Box 4015
New Orleans, LA  70178-4015

Holli Herrle-Castillo
LOUISIANA APPELLATE PROJECT
P. O. Box 2333
Marrero, LA 70073-2333

Sherry Watters
LOUISIANA APPELLATE PROJECT
P. O. Box 58769
New Orleans, LA 70158

Jordan A. Mitchell, #766872
David Wade Correctional Center
670 Bell Hill Road
Homer, LA 71040

      COUNSEL FOR DEFENDANTS/APPELLANTS

Jason R. Williams
District Attorney, Parish of Orleans
Brad Scott
Chief of Appeals, Parish of Orleans
Zachary M. Phillips
Assistant District Attorney, Parish of Orleans
619 S. White Street
New Orleans, LA  70119

COUNSEL FOR APPELLEE- STATE OF LOUISIANA

**CONVICTIONS AND SENTENCES AFFIRMED**
FEBRUARY 9, 2026

This appeal arises from the convictions and sentences of Defendants, Jordan Mitchell ("Mitchell'), Zaykis Bolden ("Bolden"), and Dylan Johnson (Johnson), for the attempted murder, rape, kidnapping, and armed robbery of two minors, I.P. and D.E.[1]

## FACTUAL AND PROCEDURAL HISTORY

Late in the evening of June 8, 2022, Mitchell, Johnson, and Bolden (collectively, "Defendants"), I.P., and D.E. left I.P.'s Pearl River home to go out together. Each Defendant was armed. Their drive took them Through Slidell, Louisiana, a gas station, a mall, and the residence of an acquaintance Mitchell. After leaving the acquaintance's residence, Mitchell refused I.P.'s request to take her home. Instead, he drove towards New Orleans where he forced I.P., at gunpoint, to engage in oral and vaginal sex. D.E. was forced to watch. Mitchell took I.P.'s cell phone; and thereafter, Mitchell shot I.P. and D.E. several times. Bolden and Johnson dumped I.P. and D.E. on Chef Menteur Highway near a

---

[1] Pursuant to La. 46:1844(W)(1), to protect the identity of minors under the age of eighteen (18) who are the victims of sex-offenses or sex-trafficking offenses, we shall employ the initials of the juveniles instead of their names. At the time of the offenses herein, I.P. was fifteen and D.E. was fourteen.

1

marina. I.P. was able to get assistance from the harbormaster of the marina. A paramedic, on his way to work, stopped and called 911 when he saw D.E. lying on the side of the road. I.P. sustained gunshot wounds to her left eye, back of her head, and her ear, resulting in the loss of her left eye. D.E. was shot in her arm, back, stomach, and head, and was left unable to walk and with memory loss.

A grand jury indicted each Defendant on the following charges: two counts of attempted first degree murder, a violation of La. R.S. 14:27/30; first degree rape of I.P., a violation of La. R.S. 14:42; two counts of second degree kidnapping, a violation of La. R.S. 14:44.1; and armed robbery of I.P., a violation of La. R.S. 14:64. Each Defendant pled not guilty to the charges.

**Pre-trial Proceedings**

Mitchell was found incompetent to proceed with trial on January 26, 2023, and was ordered committed. Thereafter, on January 11, 2024, the court found Mitchell competent to proceed and subsequently, set a March 25, 2024 trial date. After the trial date was fixed, Mitchell filed a motion to sever from the other Defendants. The trial court granted the motion; however, this Court reversed.[2] The trial date was later reset to April 1, 2024. On the day of trial, Mitchell filed a notice of defense based upon mental condition, pursuant to La. C.Cr.P. art. 726, to introduce evidence of his voluntary intoxication as a defense to the pending charges. The trial court granted the motion, and the State applied for supervisory review. This Court reversed, finding the motion untimely.[3]

---

[2] *See State v. Mitchell*, 2024-0159 (La. App. 4 Cir. 3/22/24), 385 So.3d 740, *writ den.* 2024-00378 (La. 3/28/24), 382 So.3d 105.

[3] *See State v. Mitchell*, 2024-K-0182 (La. App. 4 Cir. 4/1/24).

Bolden's pre-trial proceedings included a motion to quash filed on March 14, 2023, and a motion to recuse the District Attorney's Office filed on September 5, 2023. The trial court denied both motions.

Johnson filed a motion to determine counsel after his Private Counsel was suspended from the practice of law and withdrew as his attorney. Although Johnson expressed a desire to retain Private Counsel, the trial court appointed another attorney who had assisted Private Counsel during her representation of Johnson.

**Trial**

After the trial on the merits, the jury found Mitchell guilty as charged on each attempted first degree murder count; guilty of the first degree rape of I.P.; guilty of I.P.'s second degree kidnapping; not guilty of the second degree kidnapping of D.E.; and guilty as charged of the armed robbery of I.P.

With respect to Bolden and Johnson, the jury found each guilty of two counts each of the lesser included offenses of attempted manslaughter of I.P. and D.E.; however, not guilty of the remaining counts.

**Sentencing**

Prior to sentencing, the trial court denied Defendants' motions for post-verdict judgment of acquittal and new trial. Defendants waived all sentencing delays. After testimony, the trial court sentenced Mitchell to fifty years at hard labor on each of the attempted first degree murder counts; life without benefit of probation, parole, or suspension of sentence on the first degree rape count; forty years at hard labor on the second degree kidnapping count; and fifty years at hard labor on the armed robbery count, and ordered that the sentences be served concurrently.

Bolden and Johnson were each sentenced to fifteen years at hard labor on the two attempted manslaughter counts, with the sentences to run concurrently.

The trial court denied Mitchell's motion to reconsider sentence.

Thereafter, the trial court granted each Defendant's motion for appeal.

## DISCUSSION

Defendants raise the following assignments of error:

**Jordan Mitchell**

1. Mitchell contends his convictions for attempted first degree murder and for the other felonies—first degree rape, second degree kidnapping, and armed robbery—upon which he alleges the attempted murder convictions were based- violated his right against double jeopardy.

2. The evidence was insufficient to support his first-degree rape conviction and his armed robbery conviction.

3. This Court erred in reversing the trial court's judgment which had granted Mitchell's notice of voluntary intoxication defense.

**Zaykis Bolden**

1. The evidence was insufficient to support his attempted manslaughter conviction;

2. The sentences imposed were excessive.

**Dylan Johnson**

1. The evidence was insufficient to support his attempted manslaughter conviction;

2. The sentences imposed were excessive.

3. The trial court denied his right to retained counsel.

## Standard of Review; Sufficiency of the Evidence

Each Defendant raises errors regarding the sufficiency of the evidence to convict.

In reviewing this error, an appellate court uses the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2187 (1979), that all evidence, both direct and circumstantial, when viewed in the light most favorable to the prosecution, must be sufficient to prove each element of the crime beyond a reasonable doubt. *State v. Pigford*, 2005-0477, pp. 5-6 (La. 2/22/06), 922 So.2d 517, 520-21. An appellate court may substitute its own evaluation of the evidence for that of the factfinder "only to the extent necessary to guarantee due process of law." *Pigford*, 2005-0477, p. 5, 922 So.2d at 521. "A reviewing court should not disturb the factfinder's credibility determination unless the determination is clearly contrary to the evidence presented." *State v. Rickmon*, 2023-0766, p. 3 (La. App. 4 Cir. 2/18/25), 409 So.3d 284, 288.

Our jurisprudence is well established that where a defendant raises a claim of insufficiency of the evidence as well as other claims, a reviewing court must first address the sufficiency claim before considering the remaining assignments of error. *State v. Hearold*, 603 So.2d 731, 734 (La. 1992).

**Mitchell: Sufficiency of the Evidence**

We begin our review of the sufficiency of the evidence claims with the two claims raised by Mitchell, namely, his counseled claim that the evidence was insufficient to convict for first degree rape and his *pro se* claim that the evidence was insufficient to convict him of armed robbery.

*Mitchell's First Degree Rape Conviction*

With reference to his first degree rape conviction, Mitchell asserts that other than I.P.'s testimony, there was no evidence that she was vaginally or anally raped. Mitchell suggests his sexual interactions with I.P. were consensual; she was not "substantially harmed;" and at best, the evidence was only sufficient to convict for

5

second degree rape. Upon review of the applicable statutes and the evidence, we disagree.

Louisiana Revised Statute 14:41(A) defines rape as "the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person's lawful consent." Paragraph B provides that with respect to vaginal or anal sexual intercourse, any penetration, however slight, is sufficient to complete the crime. Paragraph C(2) defines oral sexual intercourse in part as: "[t]he touching of the anus or genitals of the offender by the victim using the mouth or tongue of the victim."

Louisiana Revised Statute14:42(A) defines first degree rape, in part, as follows:

> A. First degree rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
>
> (1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
>
> (2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
>
> (3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.

I.P. acknowledged in her testimony that she and D.E. agreed to go out with Defendants. She stated they drove to a gas station in Slidell, where Defendants exited the car, dancing while toting firearms. Thereafter, Mitchell drove them to a residence in Slidell. She testified that while at the residence, Defendants consumed alcohol and smoked marijuana. She stated she did not drink, but

6

admitted that she smoked marijuana with them. After they left the residence, she repeatedly asked Mitchell to take her home, but he refused.

I.P. testified that at some point after they arrived in New Orleans, Mitchell demanded that she perform oral sex. She said "no." He became enraged, pointed his gun at her, and threatened to shoot and kill her if she did not comply. She testified that Bolden and Johnson also told her to comply because Mitchell would shoot her if she did not. Based on her fear of getting shot, she complied with Mitchell's demand for vaginal sexual intercourse. During this time, she maintained that D.E. was outside of the car with Bolden and Johnson and that neither Bolden nor Johnson tried to help her. Instead, she testified that Bolden and Johnson just watched and told her that this was "gangsta shit."

I.P. said that her hospital examination included a sexual assault kit. She told the nurse what happened to her and also gave a statement to the treating physician and to a social worker.

To rebut I.P.'s testimony as the sole basis to convict, Mitchell points out that although there was evidence of seminal fluid in the swabs taken from her vaginal and anal areas, there was no spermatozoa found in them. He also notes that I.P. initially failed to tell the police and failed to tell the Sexual Assault Nurse Examiner ("SANE") nurse that she had been vaginally raped. Further, Mitchell emphasizes that D.E. could not remember him having vaginal sex with I.P.

However, we find that none of Mitchell's arguments disproves that an oral or vaginal rape occurred. As to Mitchell's claim that I.P. did not tell a SANE nurse regarding the vaginal rape, Heidi Martin, the SANE nurse who conducted the forensic exam of I.P., testified that survivor mechanisms to trauma can cause a victim to purge from memory what occurred. Likewise, Heidi Tujague, the SANE

7

nurse who conducted the forensic exam of I.P., testified that I.P. was drowsy and slow to answer questions during her examination. Ms. Tujague explained that the trauma I.P. experienced after having been sexually assaulted and shot multiple times could have affected her memory of the details of the incident. Ms. Tujague also testified that sometimes a victim's memories will come back in fragments, and it did not surprise her if I.P. remembered more details, such as the vaginal rape, later. In addition, Angela Maher, the DNA expert, testified that while the vaginal, genital, anal, and perianal swabs did not show spermatozoa, they were positive for seminal fluid.

Moreover, Mitchell's reliance on D.E.'s testimony that she did not recollect a vaginal rape is not dispositive as to whether Mitchell raped I.P. Notably, D.E. also testified there were gaps in her memory of that night and I.P. testified that D.E. may not have seen everything because she was not in the car during part of the rape(s).

Most importantly, Mitchell's attack on I.P.'s credibility is undermined by the fact that the jury clearly credited I.P.'s testimony and rejected any argument that her sexual encounters with Mitchell were consensual. In conjunction therewith, the jury also rejected Mitchell's contention that although I.P. may have been verbally threatened during the sexual acts, she nevertheless was released "substantially unharmed." "It is well-settled in the jurisprudence that the testimony of a single witness is enough to support a conviction and that the trier of fact's credibility determination regarding a witness' testimony should not be disturbed unless such testimony is clearly contrary to the evidence." *Rickmon*, 2023-0766, pp. 7-8, 409 So.3d at 290. In this matter, I.P.'s testimony supports that she was substantially harmed by being forced to submit to oral and vaginal rape at

8

gunpoint and fearing for her life, a fear that was realized when Mitchell shot I.P. and D.E. *See State v. Lagarde*, 2003-0606 (La. App. 4 Cir. 12/10/03), 861 So. 2d 871, where this Court upheld the defendant's first degree rape conviction because he had a gun in his possession throughout the incident.

Therefore, based on the jury's favorable credibility determination of I.P.'s testimony, the State met the elements pursuant to La. R.S. 14:42A(2) and (3) to convict Mitchell of first degree rape. Specifically, I.P was forced to engage in oral and vaginal sex under the threat of immediate bodily harm accompanied by power of execution and could not resist because Mitchell was armed with a dangerous weapon. The jury's findings were not clearly contrary to the evidence. Hence, Defendant's counseled assignment of error that the evidence was not sufficient to convict of first degree rape has no merit.

*Mitchell's Armed Robbery Conviction*

In Mitchell's *pro se* assignment of error, he alleges the evidence was insufficient to convict him of armed robbery, maintaining that I.P.'s cell phone was not found in his car or residence and was never recovered. Mitchell also cites alleged inconsistencies between the testimony of I.P and D.E. He alleges both were under the influence of alcohol and marijuana. Additionally, Mitchell represents that because the jury found Bolden not guilty of armed robbery, it could not have found him guilty of armed robbery. However, upon review, we find the trial evidence supports the jury's verdict to convict Mitchell of armed robbery.

Louisiana Revised Statute 14:64 defines armed robbery as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." While I.P. testified that Mitchell instructed Bolden to

9

confiscate her cellphone so that she could not call the police after the rape, she also stated that Mitchell actually took the cellphone from her. Therefore, we find the evidence was sufficient to support Mitchell's armed robbery conviction. This *pro se* assignment of error has no merit.

**Bolden/Johnson: Sufficiency of the Evidence/Attempted First Degree Manslaughter**

Both Bolden and Johnson allege that there was insufficient evidence to support their attempted manslaughter convictions. Both argue that the evidence was insufficient to show that they had the specific intent to kill either victim and were not principals to the shootings committed by Mitchell. Accordingly, as their arguments are intertwined, we shall address this error jointly.

Louisiana Revised Statute 14:27(A) states the following:

Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it is immaterial whether, under the circumstances, he would have actually accomplished his purpose.

La. R.S. 14:10(1) defines specific intent as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." Specific intent may be inferred from a defendant's actions and the circumstances of the case. *State v. Scott*, 2023-0022, p. 9 (La. App. 4 Cir. 8/30/23), 372 So.3d 42, 51.

Louisiana Revised Statute 14:24 defines a principal as "all persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid, and abet in its commission, or directly or indirectly counsel or procure another to commit a crime

10

. . ."  A person must knowingly participate in the planning or execution of a crime to be considered a principal. *State v. Pierre*, 1993-0893 (La. 2/3/94).

In this case, the State maintained that Bolden and Johnson were principals in the shooting of I.P. and D.E.   However, Bolden and Johnson argue that the State presented no evidence that they directly threatened or intended to shoot I.P. or D.E. In support, Bolden and Johnson rely on D.E.'s testimony.   D.E. testified that Bolden and Johnson tried to protect her that night, however, they did not try to protect I.P.  Bolden and Johnson also note that D.E. denied that they were laughing during the rape, contrary to assertions made by I.P.

The State counters with I.P.'s testimony.   I.P. testified that Bolden and Johnson told her to comply with Mitchell's demand for sex because he would shoot her if she did not.  She stated that as Mitchell was forcing himself on her at gunpoint, Bolden and Johnson were outside of the car with D.E., and neither tried to help her.  Instead, she testified, they just watched and told her this was "gangsta shit."  After Mitchell drove to the Chef Menteur location where the shootings took place, Mitchell told Bolden and Johnson to get out of the car and they complied, while laughing.  Mitchell then shot I.P. three times and shot D.E.  She said she pretended to be dead, and Johnson grabbed her arms, Bolden grabbed her legs, and they threw her out of the car.  Defendants, including Bolden and Johnson, then fled and left both I.P. and D.E. on the side of the road.

In reviewing the totality of the circumstances surrounding I.P.'s rape and the subsequent shootings, I.P.'s testimony established that Bolden and Johnson knowingly aided and abetted Mitchell in procuring I.P.'s rape.   They coerced her into submission under the threat that Mitchell would shoot her; and concomitantly, failed to offer I.P. any assistance to prevent the rape.   I.P.'s testimony also

11

supported that Bolden's and Johnson's laughter throughout the offenses demonstrated a willingness to participate with Mitchell's criminal endeavors as "gangsta shit." Although Bolden and Johnson argue on appeal that they were afraid of Mitchell, no evidence was introduced at trial to document their fear. Instead, the evidence revealed that Bolden and Johnson also were armed with firearms throughout the entire evening. Moreover, there was no evidence that Mitchell threatened Bolden or Johnson to obtain their cooperation. Instead, I.P.'s testimony showed Bolden and Johnson were also armed, and they laughingly "concerned" themselves with Mitchell's offense. They complied, under no threat by Mitchell, with his instructions. Although Bolden and Johnson contend their alleged efforts to "protect" D.E. illustrated they lacked the specific intent to kill, it is undisputed that they offered no protection to I.P. Additionally, closer scrutiny of their so-called protection of D.E., indicated no tangible help was extended on the scene. Bolden and Johnson did not intervene on D.E.'s behalf to prevent her from being forced to watch I.P.'s rape or prevent her from being shot. To the contrary, Bolden and Johnson threw D.E. and I.P. out of the car after the shootings and left each for dead.

As referenced in *Scott*, 2023-0022, p. 9, 372 So.3d at 51, specific intent may be inferred from a defendant's actions and the circumstances of the case. I.P.'s testimony substantiated that Bolden and Johnson acted on their own accord and were under no threat or duress from Mitchell when they chose to assist Mitchell after the shootings. As established in *Rickmon*, 2023-0766, pp. 7-8, 409 So.3d at 390, the testimony of a single witness may be sufficient to convict and a reviewing court should not disturb the jury's credibility determination unless clearly contrary to the evidence presented.

12

Pursuant to *Jackson v. Virginia*, *supra*, in viewing the evidence in the light most favorable to the prosecution, a jury could find that Bolden's and Johnson's willingness to engage in actions in furtherance of I.P.'s rape and the shootings provided sufficient evidence of a specific intent to kill in their capacity as principals. Accordingly, we find Bolden's and Johnson's claims that the evidence was insufficient to convict them of attempted manslaughter lack merit.

We now return to review Mitchell's, Bolden's and Johnson's remaining assignments of error.

**Mitchell: Double Jeopardy**

In this error, Mitchell alleges his convictions for attempted first degree murder and his separate convictions on first degree rape, second degree kidnapping, and armed robbery subjected him to double jeopardy. He suggests the possibility exists that his rape, kidnapping, and armed robbery convictions improperly served as the predicate to convict him of attempted *first* degree murder.

The Fifth Amendment to the U.S. Constitution provides in part: "No person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb." Likewise, Art. I, Section 15 of the Louisiana Constitution provides in part: "No person shall be twice placed in jeopardy for the same offense, except on his application for a new trial, when a mistrial is declared, or when a motion in arrest of judgment is sustained." In determining whether double jeopardy exists, the seminal decision of *Blockburger v. U.S.,* 284 U.S. 299, 304, 52 S.Ct. 180, 182 (1932), explained "[t]he applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each of the

13

provisions requires proof of a fact which the other does not."[4]  Louisiana courts employ the "same act" test set forth in *Blockburger* to determine whether convictions of more than one offense arising out of the same act subject a defendant to double jeopardy. *See State v. Frank*, 2016-1160, p. 10 (La. 10/18/17), 234 So.3d 27, 33-34.

In support of his double jeopardy argument, Mitchell relies on *State v. Holley*, 53,405, 53-406, 53,407 (La. App. 2 Cir. 4/22/2o), 297 So.3d 180 and *State v. Romero*, 2021-173 (La. App. 3 Cir. 12/15/210, 331 So.3d 44.  In *Holley*, the defendant was convicted of two counts of attempted first degree murder and one count of aggravated arson while attempting to kill a husband and wife by detonating two pipe bombs.  In finding the possibility of a double jeopardy violation, the *Holley* Court noted that "*the verdict form [did] not preclude the possibility that the jury found Holley guilty of attempted first degree murder **only** by reason of his specific intent to kill while engaged in aggravated arson.* 53,405, p. 9, 297 So.3d at 186. (Emphasis supplied).  Similarly, in *Romero*, the defendant was convicted of attempted first degree murder and armed robbery when the victim was shot during the robbery.  The Third Circuit, noting that the trial court had instructed the jury it must find that defendant was engaged in the perpetration or attempted perpetration of an armed robbery in order to convict of attempted first degree murder, opined that "double jeopardy precludes the conviction and punishment of the defendant for both first degree murder and the underlying felony."  *Romero*, 2021-173, p. 23, 331 So.3d at 462.  However, we find

---

[4] In *State v. Frank*, 2016-1160 (La. 10/18/17), 234 So.3d 27, the Court held that the earlier "same evidence" test employed in Louisiana jurisprudence no longer applied to a double jeopardy determination.

14

Mitchell's double jeopardy argument is fundamentally flawed and his reliance on *Holley* and *Romero* is misplaced.

*Blockburger* has established that the first prong to consider if double jeopardy attaches is whether "the same act or transaction constitutes a violation of two distinct provisions." 284 U.S. at 304, 52 S.Ct. at 182. In *Holley* and *Romero*, the defendants' attempted first-degree murder convictions and the predicate offenses arose out of the same event: in *Holley*, the defendant attempted to kill his victims while engaged in detonating a pipe bomb; and the *Romero* defendant's attempt to kill his victim arose out of an armed robbery. Here, unlike *Holley* and *Romero*, Mitchell's convictions on the rape, kidnapping, and armed robbery charges do not constitute double jeopardy under *Blockburger* as those offenses did not arise out of the same act or transaction as the attempted first degree murder convictions. Particularly, Mitchell was not simultaneously actively *engaged* in any of the alleged predicate offenses of first degree rape, second degree kidnapping, or armed robbery at the time he attempted to kill I.P. and D.E. Rather, Mitchell engaged in a series of separate criminal offenses of kidnapping, rape, armed robbery, and then, the attempted murders. The fact that the jury separated and distinguished the other felonies from the attempted murders is underscored by the fact that Mitchell was found not guilty of the second degree kidnapping of D.E.

The facts of this case do not show that Mitchell was twice placed in jeopardy for the same offense. Rather, the record supports that independent of the aggravated kidnapping, first degree rape, and armed robbed charges, the State proved that Mitchell had the specific intent to kill both I.P. and D.E. That proof of an intent to kill two or more people satisfied the statutory elements to convict

15

Mitchell of attempted first degree murder under La. R.S. 14:30(2). Accordingly, we find this error is not meritorious.

**Mitchell: Intoxication Defense**

Mitchell's final assignment of error contends this Court erred in its pretrial reversal of the trial court's judgment which had granted Mitchell's request to present a voluntary intoxication defense. Mitchell filed notice of the defense on the first day of trial to contest whether he had the requisite mental state to commit the crimes with which he was charged.

Louisiana Code of Criminal Procedure article 726(A) provides the following guidelines for a defendant to raise a mental defect defense:

> If a defendant intends to introduce testimony relating to a mental disease, defect, or other condition bearing upon the issue of whether he had the mental state required for the offense charged, he shall *not later than ten days prior to trial or such reasonable time as the court may permit,* notify the district attorney in writing of such intention and file a copy of such notice with the clerk. *The court may for cause shown allow late filing of the notice or grant additional time to the parties to prepare for trial or make such other orders as may be appropriate.* (Emphasis added).[5]

The trial court granted Mitchell's motion, finding that he had shown good cause for the late filing. However, this Court reversed the trial court's judgment, finding "[n]otice was untimely given under La. C.Cr.P. art. 726, no good cause for the late filing of notice was presented." *State v. Mitchell*, 2024-0182 (La. App. 4 Cir. 4/1/24), unpub.

Mitchell's "good cause" reasons for the delayed notice included the State's alleged late discovery filings; this Court's reversal of his motion to sever; and his

___

[5] For purposes of La. C.Cr.P. art. 726, intoxication is an "other condition" considered in determining whether the defendant had the mental state for the offense charged. *See State v. Trahan*, 576 So.2d 1, 5 (La. 1990).

counsel's inability to meaningfully consult with him until Mitchell was deemed competent to proceed. Upon review, however, Mitchell does not show how any of these purported reasons precluded Mitchell's ability to raise voluntary intoxication as a defense and to provide timely notice thereof. We especially note that Mitchell was declared competent to proceed almost three months prior to trial.

This Court recognizes that a defendant has a constitutional right to present a complete defense and offer relevant evidence arising out of that defense. *See State v. Trahan*, 576 So.2d 1, 6 (La. 1990). In *Trahan*, as in the present matter, the appellate court found the defendant did not give timely notice of his intent to raise a voluntary intoxication defense as required pursuant to La. C.Cr.P. art. 726(A), emphasizing that the purpose of the article is to "eliminate unwarranted prejudice that could arise from surprise testimony." *Id.*, *quoting State v. Toomer,* 395 So.2d 1320, 1329 (La. 1981). Nevertheless, the *Trahan* Court determined that the defendant's constitutional right to present a defense was not impaired where other evidence was introduced to support the defendant's claim that he had been drinking. *Id.* Likewise, in the case *sub judice*, the jury was aware that Mitchell had consumed alcohol and smoked marijuana through I.P.'s testimony. Hence, Mitchell was not impaired in his ability to present a complete defense, especially where Mitchell did not identify witness to support his intoxication defense.

As Mitchell fails to show this Court's ruling was patently erroneous or produced an unjust result, this error lacks merit.

**Mitchell's Sentences**

Mitchell does not contest that his sentences were excessive. However, the trial court failed to specify that Mitchell's sentences for attempted first degree murder, second degree kidnapping, and armed robbery convictions were be served

17

without benefit of parole, probation, or suspension of sentence as required by statute. *See* La. R.S. 14:27(D)(1)(a); 14:30(C)(2); 14:44.1(C); 14:64(B). Notwithstanding, La. R.S. 15:301.1(A) provides that even when the trial court fails to so specify, the sentence "shall be deemed to contain the provisions relating to the service of that sentence without benefit of probation, parole, or suspension of sentence" and "shall not in any way affect the statutory requirement that all or a portion of the sentence be served without" these benefits. Therefore, no additional action is required and Mitchell's sentences are to be served without benefit of parole, probation, or suspension of sentence. *See State v. Williams*, 2000-1725, p. 10 (La. 11/28/01), 800 So.2d 790, 799.

**Bolden and Johnson: Excessive Sentence**

Bolden and Johnson each contend their respective sentences of fifteen years at hard labor—to run concurrently—are excessive.

The imposition of excessive sentences is prohibited by both the Eighth Amendment to the U.S. Constitution and by La. Const. art. I, Section 20. In reviewing an excessive sentence claim, La. C.Cr.P. art. 881.4D, "[t]he appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed." As noted by this court in *Wilson*, 2014-1267, p. 23, 165 So.3d at 1165, "[o]n appellate review of an excessive sentence claim, the relevant question is not whether another sentence might have been more appropriate but whether the trial court abused its broad sentencing discretion."

However, before we review the merits of this assignment of error, the record reflects that neither Bolden nor Johnson lodged actual objections to the sentences

18

or filed a motion to reconsider sentence pursuant to La. C.Cr.P. art. 881.1.[6] When that occurs, appellate review of a sentence is limited to a review for constitutional excessiveness. *See State v. Banks*, 2023-0806 (La. App. 4 Cir. 5/24/24), 391 So.3d 24. Therefore, we must limit our review of Bolden's and Johnson's excessive sentence claims to a bare review for constitutional excessiveness only.

A sentence is unconstitutionally excessive when it "makes no measurable contribution to acceptable goals of punishment or amounts to nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime." *State v. Ferguson*, 2019-01247, p. 2 (La. 12/22/20), 307 So.3d 198. The matter of the excessiveness of a sentence is a question of law. *State v. Freeman*, 23-0074, p. 6 (La. App. 4 Cir. 2/7/23), 357 So.3d 880, 885.

After considering the testimony and evidence presented at the sentencing, the trial court expressed it had never seen a more "heinous" case, describing Defendants' disregard for the victims lives as "mind boggling." The trial court noted that all Defendants were armed, and not one helped the victims.

The maximum sentences that Bolden and Johnson could have received for their attempted manslaughter convictions on each count is twenty years.[7] On its face, the fifteen years imprisonment on each count, is not illegal. The trial court's reasons for the sentences show the sentences were not imposed to inflict needless suffering as the court considered the mitigating evidence offered by Bolden and

---

[6] Louisiana Code of Criminal Procedure art. 881.1A states, "[i]n felony cases, within thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence.

[7] Louisiana Revised Statute 14:31(B) states that "[w]hoever commits manslaughter shall be imprisoned at hard labor for not more than forty years. Pursuant to La. R.S. 14:27(D)(3), whoever attempts to commit manslaughter "shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both."

Johnson as well as the testimonies of I., D.E. and their families. Therefore, the sentences are not constitutionally excessive, and Bolden's and Johnson's claims of an excessive sentence are not meritorious.

**Dylan Johnson: Right to Choice of Counsel**

In Johnson's separate assignment of error, he asserts his right to counsel of his choice was violated when he was forced to proceed to trial with counsel appointed by the court after Johnson's Private Counsel withdrew. Johnson's argument is without merit.

Johnson's Private Counsel hired a local attorney, Joseph Zanetti, to assist. Mr. Zanetti made appearances starting in December 5, 2023. Private Counsel was suspended from the practice of law on March 19, 2024. On the same day, Private Counsel submitted an e-mail to the trial court advising the following:

> I have been placed on a 30-day suspension effective immediately. I must withdraw from all cases. As such remove my name as counsel of record;
>
> State of Louisiana
> Dylan Johnson #555643
>
> I am notifying all my clients regarding this matter. I cannot file any motions at this time to withdraw; therefore, I ask that this letter suffices. Furthermore, Mr. Joseph Zanetti has agreed to enroll in certain matters, and he will advise the court of such . . . .

Subsequently, a hearing to determine counsel was held. Johnson told the trial court that he still wanted Private Counsel to represent him, and not Mr. Zanetti. Ultimately, the trial court formally appointed Mr. Zanetti to represent Johnson, noting that Mr. Zanetti had appeared on Johnson's behalf since December 2023, and was prepared to represent him. Johnson now contends this appointment violated his right to retained counsel of choice.

20

The Sixth Amendment to the U.S. Constitution provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." The Court in *Wheat v. U.S.*, 486 U.S. 153, 158, 108 S.Ct. 1692, 1696 (1988), stated that the purpose of this right is to ensure fairness in the adversarial process by allowing the assistance of counsel, by appointment if necessary, to provide the skills in arguing law and navigating the court system that an unaided layman would not otherwise have. The *Wheat* Court noted, however, that because the goal of the right to counsel is to ensure a fair trial, there are limitations on the right to counsel of choice. 486 U.S. at 159, 108 S.Ct. at 1697. Preferred counsel must be a member of a Bar, and the defendant cannot choose counsel he cannot afford, or who refuses to represent him. *Id.*

In this case, Johnson's claim that he was denied counsel of choice fails on two prongs. First of all, as referenced in *State v. Major*, 2022-00387, p. 2 (La. 3/9/22), 333 So.3d 1231, 1232, a defendant "may not insist on representation by a person who is not a member of the bar[.]" Although Johnson complains his trial could have been continued, his co-defendant, Bolden, had invoked his right to a speedy trial. The right to counsel cannot be used to "obstruct the orderly procedure of the courts and cannot be used to interfere with the fair administration of justice." *Major*, 2022-00387, p. 2, 333 So.3d at 1232 (citation omitted). Thus, Johnson's right to counsel was not violated when weighed against his co-defendant's right to a speedy trial, Johnson's lack of entitlement to representation by an unlicensed attorney, and the fact that appointed counsel was prepared for trial.

Next, Johnson's right to choice of counsel fails because he required a court-appointed counsel after Private Counsel withdrew. The Supreme Court, in *State v. Reeves*, 2006-2419, p. 36 (La. 5/5/09), 11 So.3d 1031, 1056, citing *Wheat*, noted

21

the defendant has no right of choice with respect to appointed private counsel or an appointed public defender.

## DECREE

Based on the foregoing reasons, we affirm Defendants' convictions and sentences.[8]

**CONVICTIONS AND SENTENCES AFFIRMED**

---

[8] Pursuant to La. R.S. 15:301.1(A), Mitchell's sentences for attempted first degree murder, second degree kidnapping, and armed robbery are deemed to be served without benefit of parole, probation, or suspension of sentence as statutorily required.